# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEMETRA BAYLOR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-1995 (ABJ) |
| MITCHELL RUBENSTEIN & ASSOCIATES, P.C., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Demetra Baylor brought this case against defendants Mitchell Rubenstein & Associates, P.C., and Rubenstein & Cogan, P.C.,[1] alleging that defendants violated various provisions of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, the D.C. Debt Collection Law, D.C. Code § 28-3814 *et seq.*, and the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3901 *et seq.* Compl. ¶¶ 28–48 [Dkt. # 1]. Defendants moved to dismiss the three count complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and they also sought dismissal of defendant Rubenstein & Cogan on the ground that it is not a separate legal entity, but the trade name of defendant Mitchell Rubenstein & Associates. Defs.' Mot. to Dismiss [Dkt. # 7]; Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 7-1]. Plaintiff opposed the motion to dismiss.

---

1     There is some confusion as to who is actually a named defendant in this case. The caption of the complaint only names Mitchell Rubenstein & Associates, P.C., and Rubenstein & Cogan, P.C. as defendants. *See* Compl. [Dkt. # 1]. But the body of the complaint refers to Mitchell Rubenstein – managing partner of Mitchell Rubenstein & Associates – as a defendant as well, *id.* ¶ 6, though there is no evidence on the docket that Rubenstein was served in his individual capacity. As a result, the Court will not treat Mitchell Rubenstein as a named defendant in this case.

Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") [Dkt. # 8]. Because the Court finds that Rubenstein & Cogan is not a separate legal entity, it will grant defendants' motion to dismiss that defendant from this case. The Court will also grant in part and deny in part defendants' motion to dismiss Counts II and III because it finds that all but two of plaintiff's claims under the D.C. Debt Collection Law fail to state claims upon which relief may be granted (Count II), and because it finds that the D.C. Consumer Protection and Procedures Act does not regulate defendants' conduct here (Count III).

## BACKGROUND

### I. Factual Background

In February 2013, plaintiff Demetra Baylor received a letter dated February 21, 2013, from defendants Mitchell Rubenstein & Associates, P.C., and Rubenstein & Cogan, notifying her that she owed an alleged debt of $26,471.07. Compl. ¶ 21; Feb. 21, 2013 Letter to Pl., Ex. E to Compl. ("Ex. E to Compl.") [Dkt. # 1-1]. The letter, which was typed on the letterhead of the Law Offices of Rubenstein & Cogan, explained that plaintiff's account "ha[d] been referred to [defendants'] office for collection," and it listed "Arrowood Indemnity Company" as the creditor to whom plaintiff owed the stated amount. Compl. ¶ 21; Ex. E to Compl. It did not list the name of the original creditor or the address of the original and current creditor. Compl. ¶ 21; Ex. E to Compl. The letter also noted that the debt was linked to defendants' file number "R80465," and that the amount due could change based on "interest, late charges, and other charges that may vary from day to day." Ex. E to Compl. Finally, the letter informed plaintiff that she had thirty days to dispute the validity of the debt and to request written verification, and that if the debt was "not paid or otherwise resolved," defendants had "been instructed by [their] client to review the matter for possible legal action." *Id.*

2

Plaintiff disputed the debt and sent a letter dated March 21, 2013, to defendants. Compl. ¶ 22; Mar. 21, 2013 Letter to Defs., Ex. F to Compl. ("Ex. F to Compl.") [Dkt. # 1-1]. She requested verification of the debt, and specifically sought the following information: "the owner of [the] debt;" defendants' "connection with collecting this debt;" and "an itemization of how [the] amount was calculated and where it came from and a clear breakdown of all fees, interest, and other charges." Ex. F to Compl.

Defendants responded in a letter dated March 26, 2013.[2] Compl. ¶ 23; Mar. 26, 2013 Verification Letter to Pl., Ex. D to Compl. ("Ex. D to Compl.") [Dkt. # 1]. The letter – sent on the letterhead of the Law Offices of Rubenstein & Cogan – listed the creditor as "Arrowood Indemnity Company/Tuition Guard," and it named and provided the address of the original creditor: "Citibank (South Dakota) N.A." Compl. ¶ 23; Ex. D to Compl. The letter also provided a breakdown of the original disbursements to plaintiff that comprised the debt as well as an indication of the interest rate per annum. Ex. D to Compl. By adding up the subtotals listed in the verification letter, the total amount due came to $31,268. *Id.*

By May 2013, plaintiff had retained counsel regarding the debt described in the February 21 and March 26 letters. Her attorney sent a letter to defendants on May 21, 2013, advising defendants that plaintiff had retained counsel regarding the debt associated with defendants' file number R80465 and reiterating plaintiff's request for additional information. May 21, 2013 Letter to Defs., Ex. B to Compl. ("Ex. B to Compl.") [Dkt. # 1-1]. The letter included a request

---

2   Plaintiff asserts that defendants sent the March 26, 2013 letter to her counsel, and that it was not received until May 21, 2013. Compl. ¶ 23. The Court notes, however, that the letter itself is addressed to plaintiff at her home address, and plaintiff did not attach an envelope evidencing that it was sent in May instead of March. *See* Ex. D to Compl. As a result, there seems to be some inconsistency between what plaintiff pleaded and the exhibits she attached in support of those facts. But the Court need not resolve any factual issues because they are irrelevant to the issue before it at this time.

that defendants "not contact my client in reference to this matter" and instructed that "[a]ny future communications regarding this matter should be directed to [counsel's] firm." *Id.*

On August 22, 2013, defendants sent another letter to plaintiff on the letterhead of the Law Offices of Rubenstein & Cogan. Compl. ¶ 24; Aug. 22, 2013 Letter to Pl., Ex. A to Compl. ("Ex. A to Compl.") [Dkt. # 1-1]. The address block of the letter contained the name and address of plaintiff's attorney, but it began "Dear Ms. Baylor," and plaintiff avers that the letter was mailed directly to her rather than to her counsel. Compl. ¶ 24; Ex. A to Compl. The letter states that, according to a different file number – R83798 – plaintiff owed a debt of $27,459.48 to "Tuitonguard Arrowood Indemnity." Compl. ¶ 24; Ex. A to Compl. Defendants did not name the original creditor or provide an address for either the original or named creditor. Compl. ¶ 24; Ex. A to Compl. The letter informed plaintiff that her "account ha[d] been referred to [defendants] for collection" and that the amount due was subject to change based on "interest, late charges and other charges that may vary from day to day." Ex. A to Compl. It also informed plaintiff that she had thirty days to dispute the debt, and that if the debt was "not paid or otherwise resolved," defendants had "been instructed by [their] client to review the matter for possible legal action." *Id.*

Plaintiff's counsel responded to the August 22 letter on September 12, 2013. Compl. ¶ 25; Sept. 12, 2013 Letter to Defs., Ex. G to Compl. ("Ex. G to Compl.") [Dkt. # 1-1]. Counsel informed defendants that plaintiff disputed the debt and did not owe any money to Tuitonguard Arrowood Indemnity, and counsel requested verification of the debt that was described in defendants' August 22 letter. Compl. ¶ 26; Ex. G to Compl. The letter indicated that it was sent in response to the August 22 letter and related to plaintiff's alleged debt that was associated with

defendants' file number R83798, and it reminded defendants that plaintiff was represented by counsel and should not be contacted directly. Compl. ¶ 25; Ex. G to Compl.

Defendants responded to counsel's September 12 letter on September 26, 2013. Compl. ¶ 26; Sept. 26, 2013 Verification Letter to Pl., Ex. C to Compl. ("Ex. C to Compl.") [Dkt. # 1-1]. The verification letter stated that the current creditor was "Tuitionguard/Arrowood Indemnity" and that the original creditor was "Student Loan Corp." Ex. C to Compl. It also provided Student Loan Corp.'s address, and it reiterated that the amount due for the debt contained in defendants' file number R83798 was "$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid." Compl. ¶ 25; Ex. C to Compl.

Of the four letters sent by defendants to plaintiff, one concludes "Very truly yours, Rubenstein and Cogan," *see* Ex. E to Compl; two conclude "Very truly yours, Mitchell Rubenstein & Associates, P.C.," *see* Ex. A to Compl; Ex. C to Compl.; and one concludes "Very truly yours, Mitchell Rubenstein." *See* Ex. D to Compl.; *see also* Compl. ¶ 9.

## II. Procedural History

Plaintiff filed the three count complaint in this case on December 17, 2013. Count I alleges that defendants violated various provisions of the Fair Debt Collections Practices Act ("FDCPA"), a federal statute designed to ensure fair debt collection practices. Compl. ¶¶ 28–30. Count II claims that defendants also violated the D.C. Debt Collection Law, which like the FDCPA sets expectations for how debt collectors may fairly collect alleged debts under D.C. law. *Id.* ¶¶ 31–35. And Count III asserts that defendants violated various portions of the D.C. Consumer Protection and Procedures Act by engaging in unfair trade practices when attempting to collect plaintiff's alleged debts. *Id.* ¶¶ 36–48.

Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), and they also argued that defendant Rubenstein & Cogan should be dismissed because it does not exist as a separate legal entity from defendant Mitchell Rubenstein & Associates. Defs.' Mem. While that motion was pending, plaintiff accepted an offer of judgment from defendants on the FDCPA claim asserted in Count I, which eliminated the only federal claim in this case.[3] The Court therefore denied the motion to dismiss Count I as moot, Mar. 27, 2014 Minute Order, leaving only defendants' motion to dismiss Rubenstein & Cogan as a defendant as well as its motion to dismiss Counts II and III for the Court to decide.

**STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

---

3   The Court has continuing jurisdiction over the state law claims under 28 U.S.C. § 1365 (2012). Although this case presents a situation where the Court might otherwise in its discretion decline to continue to exercise supplemental jurisdiction over the two remaining D.C. law claims – especially because both counts deal with issues that have not been addressed by the D.C. Court of Appeals – supplemental briefing demonstrates that this Court may also have diversity jurisdiction over this case. As a result, the Court will continue to exercise its supplemental jurisdiction, rendering it unnecessary for it to decide whether it does in fact have diversity jurisdiction as well.

sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 566. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

### I. The Court will dismiss Rubenstein & Cogan as a defendant.

In their motion to dismiss, defendants argue that Rubenstein & Cogan must be dismissed as a defendant in this case because it is not a separate legal entity, but is instead the registered trade name of defendant Mitchell Rubenstein & Associates. Defs.' Mem. at 6–7. Plaintiff objected to this position, arguing only that defendants did not provide documentation that Rubenstein & Cogan was not a separate legal entity at the time of these violations. Pl.'s Opp. at

7

1–2. Defendants then supplied the documentation with its reply brief. Trade Name Application, Ex. 1 to Defs.' Reply to Pl.'s Opp. [Dkt. # 9-1].

Based on the trade name application submitted by defendants, the Court concludes that Rubenstein & Cogan is not a separate legal entity, but is instead the trade name of defendant Mitchell Rubenstein & Associates. As a result, Rubenstein & Cogan is not a proper defendant and will be dismissed from the case.

## II. The D.C. Debt Collection Law claims alleged in Count II will be dismissed in part.

Count II of the complaint asserts that defendants violated several provisions of D.C. Debt Collection Law ("DCDCL") when they sent the four attached letters to plaintiff in an attempt to collect her alleged debts. Compl. ¶¶ 31–35. Defendants moved to dismiss this count on the ground that plaintiff failed to state a claim upon which relief may be granted because the letters comply with the requirements of the D.C. statute. Defs.' Mem. at 13–14. Because the letters were attached as exhibits to the complaint, they may be considered at the motion to dismiss stage, and their content controls over the bare allegations in the complaint. *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 46 (D.D.C. 2006), quoting *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 984 n.1 (D. Md. 2002) ("[W]hen the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail.").

### A. The Court will dismiss plaintiff's claim that defendants violated D.C. Code § 28-3814(f)(4).

Plaintiff alleges that defendants violated section 28-3814(f)(4) because they failed to supply the name and address of the current creditor as well as the original creditor in the February 21 and August 22 letters. Compl. ¶¶ 21(b), 24, 32(b). She also asserts that defendants

violated that section when they identified the current creditor differently in the March 26 and September 26 verification letters than what had been set forth in the February 21 and August 22 letters. *See id.* ¶¶ 21, 23 (comparing the February 21 letter, which lists "Arrowood Indemnity Comp." as the creditor, to the March 26 verification letter, which lists "Arrowood Indemnity Company/TuitionGuard" as the creditor); *id.* ¶¶ 24, 26 (comparing the August 22 letter, which lists "Tuitionguard Arrowood Indemnity" as the creditor, with the September 26 verification letter, which lists "Tuitonguard/Arrowood Indemnity" as the creditor). These circumstances do not state a violation of D.C. law.

Section 28-3814(f)(4) provides that a debt collector violates the DCDCL when it fails to "clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, *or* to whom the claim is owed, at the time of making any demand for money." D.C. Code § 28-3814(f)(4) (emphasis added). All four of defendants' letters satisfy that requirement. All four letters were sent on defendants' letterhead, which lists the firm's full name and address, *see* Ex. E to Compl.; Ex. D to Compl.; Ex. A to Compl.; Ex. C to Compl., and the first letter sent with respect to each debt – the February 21 and August 22 letters – state in the opening sentence that plaintiff's "account has been referred to this office for collection." *See* Ex. E to Compl.; Ex. A to Compl. As a result, the letters demonstrate that defendants complied with the plain language of section 28-3814(f)(4) by "clearly disclos[ing] the name and full business address of the person to whom the claim has been assigned for collection . . . at the time of making any demand for money." D.C. Code § 28-3814(f)(4). This part of Count II will therefore be dismissed.

**B. The Court will dismiss in part plaintiff's claim that defendants violated D.C. Code § 28-3814(f)(5).**

Plaintiff next alleges that defendants violated section 28-2814(f)(5), which provides that a debt collector may not make "any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding." D.C. Code § 28-3814(f)(5). Plaintiff claims that defendants violated this provision in two ways: first, by misrepresenting the amount of plaintiff's total alleged debt in each of the four letters, and second, by suggesting that if plaintiff did not pay the debt, defendants would review the matter for possible legal action. Pl.'s Opp. at 18–19; *see also* Compl. ¶ 32(c). Defendants maintain that the letters did not misrepresent the amount due or impermissibly threaten legal action. *See* Defs.' Reply to Pl.'s Opp. ("Defs.' Reply") at 4–5 [Dkt. # 9].

With respect to plaintiff's first allegation, the Court finds that the letters support an inference that defendants violated section 28-3814(f)(5) by misstating the amount owed. First, the February 21 and March 26 letters – both of which relate to defendants' file number R80465 – state two different amounts owed, even though the March 26 letter was meant to be a verification of the debt alleged in the February 21 letter. *Compare* Ex. E to Compl. (alleging a debt of $26,471.07), *with* Ex. D to Compl. (alleging a debt of $31,268). Defendants dismiss the discrepancy by pointing to the language in the February 21 letter that notifies plaintiff that the amount due may go up based on "interest, late charges and other charges that may vary from day to day." Ex. E to Compl.; *see also* Defs.' Mem. at 14.

But defendants' reference to interest and late charges does not eliminate the potential for confusion created by the difference in the amounts stated in the two letters. The March 26 verification letter states that the amount due was calculated through July 28, 2011, a date approximately 2.5 years *before* defendants sent the February 21 letter. Yet, it specifies an

10

amount that is almost $5,000 greater than the amount in the February 21 letter. This cannot be explained by the inclusion of future interest or charges that continue to accrue after plaintiff received the February 21 payment and before the debt was paid. Moreover, defendants' position that the discrepancy is the result of interest is inconsistent with defendants' representation in the February 21 letter, which explicitly states that "[a]s of the date of this letter you owe $26,471.07." Ex. E to Compl. It is unclear what the defendants were thinking and how the inconsistent numbers were derived, so although the Court expresses no opinion as to whether plaintiff will ultimately succeed on this claim, it finds that plaintiff has satisfied her low burden to set forth facts that give rise to a plausible inference that the letters did not fulfill the requirement in section 28-3814(f)(4) that defendants clearly state the amount of the alleged debt.

The Court reaches the same conclusion with respect to the debt that defendants sought to collect through the August 22 and September 26 letters from file number R83798. Ex. A to Compl.; Ex. C to Compl. Although both letters allege that the same amount is owed ($27,459.48), *see* Ex. A to Compl.; Ex. C to Compl., the September 26 verification letter states for the first time that the amount owed is "$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid." Ex. C to Compl. This directly conflicts with the statement in the August 22, 2013 letter, which informed plaintiff that "[a]s of the date of this letter you owe $27,459.48," Ex. A to Compl., and that conflict is not cured by defendants reference to future interest or late fees that may apply. As a result, the Court finds that plaintiff has satisfied her burden at the motion to dismiss stage to state a claim for violation of section 28-3814(f)(5) with respect to the amounts allegedly owed.

She failed to state a claim, however, that any of the four letters falsely represented the status of any legal proceeding surrounding the debts. Defendants first contacted plaintiff about

the two alleged debts in the February 21 Letter (file number R80465) and the August 22 letter (file number R83798).  *See* Ex. E to Compl.; Ex. A to Compl.  Both of those letters state that *if* the accounts are "not paid or otherwise resolved, [defendants] have been instructed by [their] client to review the matter for *possible* legal action," Ex. E to Compl. (emphasis added); *accord* Ex. A to Compl., and they both also provide in text that is underlined and slightly larger than rest of the text that "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account."  Ex. E to Compl.; *accord* Ex. A to Compl.  The Court therefore concludes that the letters did not falsely represent that legal proceedings were imminent as plaintiff contends, and this part of Count II will be dismissed.[4]

### C. The Court will dismiss plaintiff's claim that defendants violated D.C. Code § 28-3814(f)(9).

Plaintiff alleges next that defendants violated section 28-3814(f)(9) because defendants sent all four letters to plaintiff or her counsel on the letterhead of the Law Offices of Rubenstein & Cogan, creating the false impression that defendants were hired to bring suit against plaintiff.  Pl.'s Opp. at 19; *see also* Compl. ¶ 32(d).  She also points to the language from the letter quoted above, which states that failure to resolve the disputed debts would result in defendants' review of plaintiff's accounts for "possible legal action."  Pl.'s Opp. at 19.

---

4   Plaintiff relies on *Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006), in support of her claim that even mentioning the possibility of a lawsuit is misleading and violates consumer protection laws.  But plaintiff's reliance is misplaced.  In *Brown*, the Third Circuit – applying an analogous provision in the Fair Debt Collection Practices Act – found that the plaintiff stated a claim even though the letter used the conditional language "could" when discussing potential legal action if the debt was not resolved.  464 F.3d at 455.  The court concluded that, because plaintiff had pleaded that the defendant "as a matter of course" did not refer debts to their attorney but instead referred them to another collection agency, the mention of a potential lawsuit might violate the FDCPA despite the conditional language because it indicated that the defendant would have taken an action "that it had no intention of taking and has never or very rarely taken before."  *Id.*  Here, there is no allegation that defendants did not intend – and therefore misled plaintiff about their intention – to review plaintiff's cases for possible legal action if the alleged debts were not resolved.

Section 28-3814(f)(9) provides that a debt collector may not make "any false representation or false impression about the status or true nature of or the services rendered by the . . . debt collector or his business." D.C. Code § 28-3814(f)(9). A review of the four letters demonstrates that defendants did not violate that provision. The first sentence in the February 21 and August 22 letters states the nature of the services rendered by defendants: "Your account[s have] been referred to this office for collection." Ex. E to Compl.; *accord* Ex. A to Compl. Any potential confusion that might arise from the use of the letterhead of the Law Offices of Rubenstein & Cogan is eliminated by the use of conditional language – that the failure to pay or otherwise resolve the debt would result in review of the account for "possible legal action," Ex. E to Compl.; *accord* Ex. A to Compl. – and the underlined, supersized text that informs plaintiff that at the time of the letters: "no attorney with the firm has personally reviewed the particular circumstances of your account." Ex. E to Compl.; *accord* Ex. A to Compl. The Court will therefore dismiss this part of Count II for failure to state a claim.

### D. Plaintiff stated a claim for violation of D.C. Code § 28-3814(g)(5).

Plaintiff's final DCDCL claim alleges that defendants violated section 28-3814(g)(5), which prohibits a debt collector from communicating "with a consumer whenever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known." D.C. Code § 28-3814(g)(5). Plaintiff points to the May 21, 2013 letter sent by her counsel to defendants, notifying them that plaintiff was represented in connection with the alleged debt owed under defendants' file number R80465, which is the debt at issue in the February 21 and March 26 letters. *See* Ex. B to Compl. In addition to requesting validation of the debt, the May 21 Letter states: "Please do not contact my client in reference to

this matter. Any future communication regarding this matter should be directed to my firm . . . ." *Id.*

On August 22, defendants then sent a letter regarding the debt associated with file number R83798 directly to plaintiff. *See* Ex. A to Compl. In his response, plaintiff's counsel admonished: "As has been communicated to you prior to the aforementioned letter, [plaintiff] has retained my firm to represent her in connection with the above-referenced matter. I request that you direct all communications on this matter to my office." Ex. G to Compl. Defendants complied with that request and sent the September 26 verification letter directly to plaintiff's counsel.

Based on these facts, defendants argue that they did not violate section 28-3814(g)(5) when they sent the August 22 letter to plaintiff because the August 22 letter dealt with a different debt and file number than the "matter" for which plaintiff had retained counsel. Defs.' Mem. at 14. They also direct the Court to the Fair Debt Collection Practices Act ("FDCPA"), which contains a similar provision barring communication with represented parties and prohibiting a debt collector from communications with a consumer "if the debt collector knows the consumer is represented by an attorney *with respect to such debt.*" 15 U.S.C. § 1692c(a)(2) (2012) (emphasis added); *see also* Defs.' Mem. at 11.

But the language of the D.C. provision is quite broad: it forbids a debt collector from using "unfair or unconscionable means to collect or attempt to collect *any* claim in any of the [listed] ways," including engaging in "*any* communication with a consumer *whenever* it appears that the consumer has notified the creditor that *he is represented* by an attorney and the attorney's name and address are known." D.C. Code § 28-3814(g)(5) (emphases added). The prohibition is not plainly limited to representation in a particular matter as in the FDCPA. It is

14

true that the letter from plaintiff's counsel specifies only that his representation of plaintiff extends to the R80465 matter. *See* Ex. B to Compl. ("Please do not contact my client in reference to *this matter*.") (emphasis added). Since the complained of August 22 letter referenced a different matter, *see* Ex. A to Compl., that fact may be significant in determining whether plaintiff can obtain punitive damages for the alleged violation of section 28-3814(g)(5). But it does not definitively establish that mailing the August 22 letter directly to plaintiff – who defendants knew had retained counsel as of May 21 – was consistent with section 28-3814(g)(5)'s broad proscription. As a result, the Court will deny defendants' motion to dismiss this part of Count II at this time.

### III. The D.C. Consumer Procedures and Protection Act claims alleged in Count III will be dismissed.

In Count III, plaintiff points to the same conduct that underlies Count II to argue that defendants violated section 28-3904 of the D.C. Consumer Procedures and Protection Act ("DCCPPA") when they sent the four letters to plaintiff about her alleged debts. Compl. ¶¶ 36–48. Defendants moved to dismiss this count for failure to state a claim on the grounds that the DCCPPA does not apply to debt collectors because debt collection is not a "trade practice," as that term is defined by the statute.[5] Defs.' Mem. at 15–17. The Court agrees.

Section 28-3904 provides a nonexhaustive list of unlawful trade practices that violate the DCCPPA and render an entity liable to a consumer regardless of whether that consumer was "in fact misled, deceived or damaged" by the entity's conduct. D.C. Code § 28-3904. The statute

---

5   In the alternative, defendants moved to dismiss Count III on the same grounds as Count II: that the letters, which plaintiff attached as exhibits to her complaint, demonstrate that defendants did not mislead or otherwise violate the consumer protection laws. Defs.' Mem. at 17–18. As a result, to the extent that Count III relies on the same conduct that the Court found could not support a violation of section 28-3814(f)(4), (5), and (9), it also cannot support a DCCPPA claim in Count III.

defines "trade practice" as "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services," which "includes consumer credit." *Id.* § 3901(a)(6)–(7).

Defendants conduct does not fall within that plain language. The letters at issue here were sent by defendants in an attempt to collect debts allegedly owed to the creditor that hired defendants. *See* Ex. E to Compl.; Ex. D to Compl.; Ex. A to Compl.; Ex. C to Compl. Defendants were not offering to sell or provide plaintiff with *any* goods or services, including consumer credit. Therefore, their attempts to collect debts are not trade practices under the DCCPPA.[6]

This conclusion is consistent with decisions by other courts in this district. In applying the DCCPPA in the context of debt collection, those courts stated that the D.C. statute applies only to "merchant[s] . . . who sell[] consumer credit as well as those entities which take an assignment of the credit account and continue the extension of credit to the consumer." *Jackson v. Culinary Sch. of Wash.*, 788 F. Supp. 1233, 1253 (D.D.C. 1992); *see also Osinubepi-Alao v. Plainview Fin. Servs., Ltd.*, No. 13-1111, 2014 WL 2211383, at *6 (D.D.C. May 29, 2014); *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 279–80 (D.D.C. 2011). As a result, in

---

6    In plaintiff's response to defendants' notice of supplemental authority, she argues for the first time that defendants' conduct is a trade practice because it "effectuates" the transfer of plaintiff's debt to the creditor that hired defendants. Pl.'s Resp. to Defs.' Statement of Supplemental Authority ("Pl.'s Suppl. Resp.") at 4 [Dkt. # 25]. In support of her position, plaintiff quoted the *Merriam-Webster Dictionary*, which defines effectuate as "to carry into effect, to bring to pass, to fulfill." *Id.* But even accepting that definition for purposes of interpreting the DCCPPA, defendants' conduct falls outside the DCCPPA's plain language. Aiding in the collection of a debt that has already been purchased or transferred does not effectuate that purchase or sale because by the time of defendants' conduct, the purchase or sale was already effectuated.

*Osinubepi-Alao v. Plainview Financial Services, Ltd.*, the court granted the defendants' motion to dismiss the DCCPPA claim because the complaint did not contain facts from which the court could conclude that the defendants – who took an assignment of the plaintiff's debt – "then subsequently 'furnishe[d], [or] ma[de] available . . . [consumer credit]." 2014 WL 2211383, at *6 (alterations in original), quoting D.C. Code § 28-3901(a)(6)–(7). Similarly, in *Busby v. Capital One, N.A.*, the court dismissed the DCCPPA claim solely on the ground that that there was no consumer-merchant relationship between the defendant and the plaintiff because the defendant was just a loan servicer, not a lender.[7] 772 F. Supp. 2d at 279–80. Since plaintiff cannot state a claim under the DCCPPA against defendants for the conduct alleged in the complaint, Count III will be dismissed.[8]

---

7    The fact that the complaint does not contain any allegation that defendants' client – the actual creditor – extended plaintiff additional credit after obtaining plaintiff's alleged debts forecloses any possibility that the DCCPPA might be triggered in this case through agency theory.

8    Plaintiff argues that the DCCPPA must apply to defendants' conduct because section 28-3909 of the DCCPPA refers to the DCDCL. Pl.'s Suppl. Resp. at 2. She also argues that the DCCPPA must apply to defendants' conduct because D.C. Code § 1-350.10, which governs the conduct of the District of Columbia when it attempts to collect delinquent debts owed to it, references the DCCPPA. *Id.* at 3. These arguments miss the mark. Section 28-3909 lists the causes of action that the District may bring against entities who are alleged to have violated the listed consumer protection laws. *See* D.C. Code § 28-3909. It does not follow that, just because the District may bring suit against a debt collector under the DCDCL, that the debt collector's conduct constitutes a trade practice. Similarly, section 1-350.10 does not support plaintiff's theory that the DCCPPA applies to defendants. As noted above, that section governs the conduct of the District of Columbia and any third party debt collectors that the district hires to collect delinquent debts owed to the city. *Id.* § 1-350.10. Contrary to plaintiff's assertion, the fact that the section explicitly requires the District and its hired debt collectors to comply with the DCCPPA supports the conclusion that the DCCPPA does not apply entities that, like defendant, are hired solely for the purposes of collecting a debt and have no consumer-merchant relationship with the consumer. Otherwise, there would be no need for section 1-350.10 to explicitly require the District and its hired debt collectors to follow the DCCPPA.

## CONCLUSION

For the reasons stated above, the Court will grant defendants' motion to dismiss in part and deny it in part: Defendant Rubstein & Cogan will be dismissed as a party; Count III will be dismissed in its entirety; and Count II – except to the extent that it alleges that the remaining defendant violated (1) section 28-3814(f)(5) by not clearly stating the amount owed, and (2) section 28-3814(g)(5) when it sent the August 22 letter directly to plaintiff after being notified that plaintiff had retained counsel – will be dismissed.[9]  A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: July 8, 2014

---

9  In her opposition to the motion to dismiss, plaintiff requested leave to amend her complaint should the Court find any of her claims deficient. Putting aside that such a request does not comport with Local Rule 7(i), the Court would nonetheless deny the request because plaintiff's inability to state the dismissed claims is not the product of a pleading deficiency, but instead are foreclosed by her own evidence that was attached to her complaint.