**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEMETRA BAYLOR,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MITCHELL RUBENSTEIN & ASSOCIATES, P.C.,**<br><br>**Defendant.** | **Case No. 1:13-cv-01995 (ABJ-GMH)** |

**MEMORANDUM OPINION**

This case was referred to the undersigned by Judge Amy Berman Jackson for the purpose of resolving several specific discovery disputes between the parties. The final dispute pending before the Court is whether defendant must produce to plaintiff certain documents for which defendant claims either attorney-client privilege or protection under the work-product doctrine. Defendant submitted those documents to the Court for in camera review.[1]

## I. BACKGROUND

On May 20, 2015, plaintiff filed a motion to compel discovery responses. See Pl. Mot. Plaintiff's motion challenged, in part, defendant's assertion of the attorney-client privilege and work-product doctrine as to several documents requested by plaintiff. Id. at 2–6. Defendant responded, arguing that the privilege protected all communications between defendant, its client, and the agent of its client. See Def. Resp. at 7–9. The Court heard oral argument on plaintiff's

[1] The relevant documents for this Order are as follows: (1) Plaintiff's Memorandum in Support of Her Motion to Compel Discovery ("Pl. Mot.") [Dkt. 69-1]; (2) Defendant's Response to Plaintiff's Motion to Compel ("Def. Resp.") [Dkt. 71]; (3) Defendant's Notice of Filing Revised Privilege Log in Conformity with Order on Motion to Compel ("Def. Rev. Priv. Log") [Dkt. 77]; (4) Plaintiff's Response to Defendant's Supplemental Privilege Log, Affidavit and Errata ("Pl. Supp. Memo.") [Dkt. 79]; (5) Defendant's Reply to Plaintiff's Response to Supplemental Privilege Log, Affidavit and Errata ("Def. Reply") [Dkt. 80].

motion on June 23, 2015.

On June 29, 2015, the Court entered an order granting in part and denying in part plaintiff's motion to compel.  See June 29, 2015 Order [Dkt. 75].  However, the Court held in abeyance any ruling on plaintiff's motion relating to defendant's claims of privilege.  Id. at 3.  In that order, the Court directed defendant to produce an updated privilege log that better identified the allegedly privileged documents.  Id. at 2–3.  The Court also ordered defendant to submit all documents for which it claimed privilege so that the Court could perform an in camera review.  Id.  On July 15, 2015, defendant submitted the allegedly privileged documents for in camera review.  Defendant filed a revised privilege log on July 16, 2015.  See Def. Rev. Priv. Log.

On June 21, 2015, plaintiff filed a document captioned "Response to Supplemental Privilege Log, Affidavit and Errata."  See Pl. Supp. Memo.  The Court did not request that plaintiff file this document and did not grant plaintiff leave to do so.  The document appears to be a supplemental memorandum of law in support of her motion.  The Court granted defendant leave to file a response to plaintiff's supplemental memorandum.  Defendant did so on July 27, 2015.  See Def. Reply.  The privilege issue, which is the sole remaining discovery dispute before the Court, is now ripe for disposition.

## II.  LEGAL STANDARD

### A.  Attorney-Client Privilege

Before the Court can analyze whether the attorney-client privilege protects the documents plaintiff seeks, it must determine which state's law of privilege applies.  Federal Rule of Evidence 501 provides that "[i]n a civil case, state law governs privilege regarding a claim or

defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In the instant case, the only remaining claims are state-law claims. See Feb. 28, 2014 Judgment [Dkt. 14]. State law therefore supplies the rule of decision in this case and, consequently, governs defendant's claims of privilege. Rule 501 does not instruct as to which state's law should govern, however. See, e.g., Credit Life Ins. Co. v. Uniworld Ins. Co., 94 F.R.D. 113, 118 (S.D. Ohio 1982) (citing Samuelson v. Susen, 576 F.2d 546, 549–50 (3d Cir. 1978)). The Court must therefore apply choice-of-law principles to determine what law to apply here. Id. Consistent with Klaxon, the Court will apply the choice-of-law analysis of the District of Columbia. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941) (holding that district courts must apply the choice-of-law principles of the state in which they sit); Chicago Ins. Co. v. Paulson & Nace, PLLC, 37 F. Supp. 3d 281, 290 (D.D.C. 2014).

Under D.C. law, the first step in a choice-of-law analysis is to determine if a conflict in fact exists between the laws of the relevant states. Eli Lilly & Co. v. Home Ins. Co., 764 F.2d 876, 882 (D.C. Cir. 1985). If no conflict exists, the court need not proceed with the choice-of-law analysis. Id. The parties suggest that either Maryland law or D.C. law governs defendant's assertion of privilege. Def. Resp. at 8–9; Pl. Supp. Memo. at 6. Both states use a substantially identical formulation of the attorney-client privilege, drawn from Wigmore:

> "'(1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.'"

E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc., 718 A.2d 1129, 1138 (Md. 1988) (quoting 8 John H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. ed. 1961)); Jones v. United

States, 828 A.2d 169, 175 (D.C. 2003).

Both D.C. and Maryland also recognize that the privilege does not apply to communications whose primary purpose is to solicit or provide business, rather than legal, advice.  See E.I. du Pont de Nemours, 718 A.2d at 1139; Crane v. Crane, 614 A.2d 935, 940 (D.C. 1992).   Facts acquired from persons or sources other than the client are not privileged.  See Haley v. State, 919 A.2d 1200, 1214 (Md. 2007); Adams v. Franklin, 924 A.2d 993, 1000 (D.C. 2007); see also Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").   Similarly, "[w]here a party authorizes the partial disclosure of materials otherwise subject to a valid claim of attorney-client privilege, the privilege must be treated as waived."   Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 551 (D.C. 1981); Harrison v. State, 345 A.2d 830, 839 (Md. 1975); Shawmut Mining Co. v. Padgett, 104 A. 40, 43 (Md. 1918).

Further, both states find that the privilege protects communications not only by the client and the attorney but also by their agents.  Kreuzer v. George Washington Univ., 896 A.2d 238, 249 (D.C. 2006); Cutchin v. State, 792 A.2d 259, 364 (Md. 2002); DeVetter v. Alex. Brown Mgmt. Servs., Inc., No. 24-C-03-007514, 2006 WL 1314014, at *7 (Md. Cir. Ct. Mar. 22, 2006) (privilege protects communications by agents of both attorney and client, so long as the purpose of the communications is to seek or provide legal advice).   The party asserting the privilege bears the burden to present the court with facts sufficient to establish the privilege.   Cutchin, 792 A.2d at 95; E.I. du Pont de Nemours, 718 A.2d at 1138.   The privilege is generally disfavored and should be construed narrowly.  E.I. du Pont de Nemours, 718 A.2d at 1138;

Wender v. United Servs. Auto. Ass'n, 434 A.2d 1372, 1374 (D.C. 1981).

Because both states apply the same formulation of the privilege, the Court can discern no conflict between Maryland and D.C. law. As a result, the Court need not determine whether Maryland or D.C. law should apply (to the exclusion of the other) in this instance.

### B. Work-Product Doctrine

The work-product doctrine is not a privilege but a qualified immunity provided under Federal Rule of Civil Procedure 26. See Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz., 881 F.2d 1486, 1492 (9th Cir. 1989). The application of the doctrine is therefore not governed by state law. Instead, Rule 26 provides, in relevant part:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B). The operative question for the work-product doctrine is "'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

2024, at 198 (1970)); F.T.C. v. Boehringer Ingelheim Pharmaceuticals, Inc., 778 F.3d 142, 149 (D.C. Cir. 2015). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." Boehringer, 778 F.3d at 149 (quoting United States v. Deloitte LLP, 610 F.3d 129, 138 (D.C. Cir. 2010)). Furthermore, "[a] document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation." Id. (citing FTC v. Grolier Inc., 462 U.S. 19, 27–28 (1983)).

If a particular document is determined to be work product, the party seeking the document must make a showing of both unavailability and need proportionate to the nature of the work product. Id. at 153. For opinion work product, the party must "make an 'extraordinary showing of necessity.'" Id. For fact work product, the party seeking to discover it must merely provide "adequate reasons" that it should be permitted to discover those facts. Id. The D.C. Circuit has indicated that the "adequate reasons" standard is equivalent to Rule 26(b)(3)(A)(ii)'s "substantial need" standard. Id.

## III. ANALYSIS

### A. Claims of Attorney-Client Privilege

#### 1. An Agency Relationship Existed Between Arrowood and Sunrise During the Time of the Relevant Communications.

This is an action brought under the District of Columbia Debt Collection Law, D.C. Code § 28-3814, by plaintiff, a debtor, against defendant, an attorney debt collector who sought to collect a debt owed by plaintiff to Arrowood Indemnity Company, a creditor. Defendant asserts the attorney-client privilege as to numerous communications between itself and Sunrise Credit Services, Inc. ("Sunrise"). Defendant asserts that this entity served as a "forwarder" for Arrowood, meaning that Arrowood contacted Sunrise so that Sunrise would find and obtain the

services of a local D.C. debt collector, namely, defendant. Def. Reply at 2 n.2. Such "forwarding" companies have become more popular in recent times to help creditors easily access a large network of collection agencies across the country. See Badeen v. PAR, Inc., 853 N.W.2d 303, at 79–80 (Minn. 2014). The record in this case does not reflect that Sunrise ever undertook direct collection actions against plaintiff such as sending a dunning letter or making collection calls. Thus, Sunrise's role appears limited to that of an intermediary between Arrowood and defendant.

A key threshold inquiry for privilege purposes, then, is whether Sunrise acted as Arrowood's agent. If Sunrise was not Arrowood's agent, then defendant disclosed all the communications at issue to an unrelated third party. Further, the allegedly privileged materials demonstrate that Arrowood knew of defendant's communication with Sunrise. If Arrowood knowingly permitted its attorney to communicate with an unrelated third party, it would have thereby waived its privilege. Edmund J. Flynn Co., 431 A.2d at 551; Harrison, 345 A.2d at 839. By contrast, if Sunrise was Arrowood's agent, then the communications between defendant and Sunrise would not be automatically disqualified from protection by the attorney-client privilege.[2]

The Court finds that, based on the record before it, Sunrise acted as Arrowood's agent for

[2] Some cases appear to draw a bright-line rule that an attorney debt collector may never assert a privilege between himself and his creditor-client. See E.I. du Pont de Nemours, 718 A.2d at 1139 (collecting cases). The dissent in E.I. du Pont de Nemours accused the majority of enforcing such a per se rule. Id. at 1144–45 (Raker, J., dissenting). However, no D.C. or Maryland case has ever expressly adopted such a rule in the context presented here – as to communications between a "forwarding" debt collector and an attorney retained to collect the debt. Indeed, the court in E.I. du Pont de Nemours declined to adopt such a rule. See id. at 1139. To the extent that such a rule exists outside of Maryland or D.C., id. at 1144 (Raker, J., dissenting) (quoting per se rule as set forth in In re Witness before the Grand Jury, 631 F. Supp. 32, 33 (E.D. Wis. 1985) and In re Shapiro, 381 F. Supp. 21, 22 (N.D. Ill. 1974)), this Court declines to adopt it. Bright-line rules based on "acceptable" businesses that may safely communicate with an attorney are ill-advised. Whatever the occupation at issue, determining whether the privilege applies to a given communication should focus on the specific content and circumstances of each communication based on analysis of the elements of the attorney-client privilege.

obtaining legal advice from defendant. E.I. du Pont de Nemours helps explain this relationship. There, a creditor contracted with a debt collector to collect a debt. E.I. du Pont de Nemours, 718 A.2d at 1141. Eventually, the debt collector hired an attorney to assist in collecting the debt after the collector's initial efforts proved unsuccessful. Id. That attorney filed suit against the debtor to collect the debt. Id. The debtor served a subpoena duces tecum on the debt collector, seeking to depose one of its employees and obtain documents regarding communications between the creditor and the debt collector. Id. The creditor asserted the attorney-client privilege. Id. The court rejected that argument, finding that there was no attorney-client relationship, only a business relationship, between the creditor and the debt collector. Id. at 1142. The court reasoned that the debt collector acted in a non-legal capacity and never rendered professional legal advice to the creditor. Id.

In contrast to E.I. du Pont de Nemours, here Arrowood hired Sunrise for the limited purpose of finding an attorney to help Arrowood collect plaintiff's debt. See Def. Resp., Ex. 4 at 42 (2013 authorization by Arrowood for Sunrise to retain counsel for purposes of suit); id. at 64 (2012 authorization). Whereas the collection agency in E.I. du Pont de Nemours retained counsel only after making unsuccessful attempts to collect the plaintiff's debt, here Sunrise was hired by Arrowood specifically as a "forwarder" to locate a debt collection counsel. Sunrise thus acted as Arrowood's agent for obtaining legal services, and defendant provided its legal services for the benefit of Arrowood. Id.; see also Restatement (Second) of Agency § 1 cmt. b (1958) (agency requires "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking"). Furthermore, unlike E.I. du Pont de Nemours, here the

communications at issue are between Sunrise, the debt collector, and defendant, the attorney. Defendant communicated with Sunrise in order that Sunrise would communicate with Arrowood. Thus, although defendant's communications passed through Sunrise to Arrowood, the presence of an intermediary does not destroy the confidential relationship between Arrowood and defendant. Kreuzer, 896 A.2d at 249; DeVetter, 2006 WL 1314014, at *7.

2. The Purported Unauthorized Practice of Law by Sunrise is Irrelevant to the Privilege Between Arrowood and Defendant.

The Court must address one further threshold issue. In her supplemental memorandum, plaintiff argues that Sunrise engaged in the unauthorized practice of law by interposing itself between Arrowood, the client, and defendant, the attorney. Pl. Supp. Memo. at 3. Plaintiff then concludes that because Sunrise engaged in the unauthorized practice of law, there can be no attorney-client privilege between defendant and Sunrise or defendant and Arrowood. Id. at 5–6. The Court is not persuaded by this argument. Assuming without deciding that Sunrise engaged in the unauthorized practice of law, plaintiff fails to explain why such wrongdoing by Sunrise should serve to waive or eliminate Arrowood's attorney-client privilege.

If defendant had engaged in the unauthorized practice of law, then there could be no attorney-client relationship between defendant and Arrowood and thus no attorney-client privilege. See, e.g., Kamasinski v. McLaughlin, No. 2001-E-0386, 2003 WL 367745, at *3 (N.H. Super. Jan. 30, 2003) (no attorney-client privilege available when purported attorney engages in the unauthorized practice of law). However, plaintiff does not suggest that defendant has engaged in the authorized practice of law. Rather, plaintiff's argument focuses on Sunrise. None of plaintiff's cited cases hold that a collection agency engaged in the unauthorized practice of law thereby waives the attorney-client privilege on behalf of its client, the creditor. Instead,

the cases focus on whether a claim may be made against a collection agency for interposing itself between the creditor and the attorney. See, e.g., J.H. Marshall & Assoc., Inc. v. Burleson, 313 A.2d 587, 600 (D.C. 1973). Whether or not such a claim may be made is not an issue before this Court and is not relevant to the parties' discovery dispute. As such, plaintiff's argument provides no colorable basis on which to find a waiver of the attorney-client privilege between Arrowood and defendant.

3. Some of Defendant's Allegedly Privileged Communications Do Not Satisfy Fundamental Requirements for Application of the Privilege.

Although the Court finds that Sunrise was the agent of Arrowood for purposes of the attorney-client privilege and finds that Sunrise's purported unauthorized practice of law is irrelevant here, this does not end the inquiry. For many of defendant's claims of privilege, the basic elements of the attorney-client privilege are not met.

For example, the communication referenced in Privilege Log Number 1[3] is an email from defendant to Sunrise regarding various loans taken by plaintiff. The email has nothing to do with the provisioning or seeking of legal advice; instead, it is merely a request for clerical information from the client. The primary purpose of the communication is the conduct of defendant's debt-collection business, not providing legal advice. Applying a similar predominant-purpose rule, several federal courts have required that the claimant "'demonstrate that the communication would not have been made but for the client's need for legal advice or services.'" Leonen v. Johns-Manville, 135 F.R.D. 94, 99 (D.N.J. 1990) (quoting First Chicago Int'l v. United Exchange Co., Ltd., 125 F.R.D. 55, 57 (S.D.N.Y.1989)). Here, this

[3] This privilege log number corresponds to the numbering in defendant's revised privilege log, which was filed July 16, 2015, and is located at Docket Number 77.

communication would have been made regardless of the client's need for legal advice. Id. As such, this communication does not fall within the privilege. Furthermore, the rest of the record reveals that defendant sent the information requested in the email to plaintiff's counsel in an email dated June 27, 2013. Thus, this communication is not covered by the privilege because Arrowood, through its agent, Sunrise, voluntarily disclosed it to plaintiff. See Hedden v. Kean Univ., 82 A.3d 238, 247 (N.J. Ct. App. 2013) (authorized disclosure by agent waives attorney-client privilege); Jonathan Corp. v. Prime Comp., Inc., 114 F.R.D. 693, 700 (E.D. Va. 1987) (same).

Privilege Log Number 2 involves the discussion of a settlement of plaintiff's debts. Like Privilege Log Number 1, this communication is not protected by the privilege because it does not involve a request for, or provision of, legal advice. Rather, it constitutes a part of defendant's ordinary debt collection activities. In the course of those activities, even non-attorney debt collectors will often discuss with the creditor the possibility of settling with a debtor for less than the debt's full value. Accordingly, such a discussion would have occurred whether or not defendant was providing legal services to Arrowood. Mere use of the word "settlement" is not enough to transform this business communication into a legal one. Further, like Privilege Log Number 1, the privilege here was waived because defendant immediately disclosed the client's settlement offer to plaintiff.

Privilege Log Number 3 includes an email from defendant to Sunrise regarding a request for a breakdown of Arrowood's settlement offer made by plaintiff's counsel. Here, like Privilege Log Numbers 1 and 2, this communication involves no legal judgment or advice. Rather, in this instance, defendant is merely a pass-through for factual information between

plaintiff and Arrowood. Additionally, the amounts of any of plaintiff's loans are facts which pre-date, and exist separately from, any attorney-client relationship between Arrowood and defendant. Finally, because this information was later disclosed to plaintiff's counsel in an email dated June 27, 2013, Arrowood waived any privilege it might assert. This same analysis also applies to Privilege Log Number 4, an email between defendant and Sunrise relating to a breakdown of plaintiff's loan amounts, which was immediately disclosed to plaintiff's counsel.

Privilege Log Number 5 refers to an email from Sunrise to defendant regarding which of plaintiff's loans were included in the settlement offer made in the email referenced in Privilege Log Number 2. In this instance, the communication is not privileged for two reasons. First, like the other emails discussed previously, this email concerns settlement discussions which are part of defendant's ordinary debt-collection activities. As a result, this email concerns business, not legal, advice. The mere fact that the communication mentions potential lawsuits in other jurisdictions is insufficient to transform it into a request for legal advice. Indeed, the statement at issue was made by a non-attorney representative of Sunrise. Nor is there any indication in the record that defendant was ever retained to represent Arrowood in these other prospective suits. Second, the facts surrounding the existence and nature of plaintiff's loans are not protected by the privilege because they pre-date any attorney-client relationship at issue here.

Based on the foregoing, the Court will grant plaintiff's motion with respect to the communications discussed above. With respect to defendant's other claims of privilege, the Court finds that, upon in camera review, those communications relate to the seeking or provision of legal advice between attorney and client related to a planned, imminent lawsuit against plaintiff. As a result, the Court will deny plaintiff's motion with respect to those

communications.

### B.   Claims of Work-Product Protection

Defendant's privilege log reveals only two instances in which defendant claims protection under the work-product doctrine. In both instances, the doctrine applies. First, in Privilege Log Number 7, defendant claims work-production protection for an email exchange between an attorney-employee of defendant and a non-attorney employee of defendant regarding affidavits for use in a collection suit against plaintiff. See Def. Rev. Priv. Log at 3, No. 7. Second, in Privilege Log Number 10, defendant claims work-product protection for a computer entry made by a non-attorney employee of defendant recording a change that employee made to the same affidavit. Id. at 3, No. 10.

Upon in camera review, the Court finds that both the email exchange and the computer entry were made because of the prospect of litigation against plaintiff. The affidavit in question was prepared solely to accompany the complaint in a lawsuit against plaintiff. The affidavit, and any documents discussing it, would not have been created at all if the suit was not forthcoming. As such, these documents concerning the affidavit would not have been prepared in substantially similar form had litigation not been imminent. Boehringer, 778 F.3d at 149.

Furthermore, plaintiff has not made a showing of need which would permit discovery of these items of work product. Indeed, in her "response" to defendant's revised privilege log, plaintiff made no attempt at showing need for these documents. See Pl. Supp. Memo. Thus, whether the documents constitute opinion work product, for which an "extraordinary showing of necessity" is required, or whether they are merely fact work product, requiring plaintiff to provide only "adequate reasons" for discovery, plaintiff has failed in her burden to make a

showing of need. Boehringer, 778 F.3d at 153. As a result, the Court will deny plaintiff's motion with respect to these two documents.[4]

## III. CONCLUSION

In light of the large number of individual communications on which the Court must rule, the Court provides the following chart summarizing the findings it made above:

| Privilege Log Number[5] | Citation by Document Number | Date and Time of Communication | Court's Ruling on Plaintiff's Motion to Compel | Reason(s) for Ruling |
|---|---|---|---|---|
| 1 | 124–125 | 3/22/13 at 10:19 a.m. | GRANTED | (1) Business advice; (2) voluntarily disclosed to plaintiff |
| 2 | 125–126 | 6/11/13 at 2:16 p.m. | GRANTED | (1) Business advice; (2) voluntarily disclosed to plaintiff |
| 3 | 126 | 6/24/13 at 10:58 a.m. | GRANTED | (1) Business advice; (2) facts exist independent of attorney-client relationship; (3) voluntarily disclosed to plaintiff |

[4] The documents at issue here are valid work product. However, the Court does not suggest that any and all documents created by an attorney debt collector will be considered work product simply because an attorney creates them. Documents related to ordinary collection activity, including dunning letters and records of telephone collection calls, would likely not qualify as work product because they are part of the debt collection business of the lawyer, not his preparation for a lawsuit. The focus of the work-product inquiry should be on the purpose of the document, i.e., whether the document was created because of the prospect of litigation, rather than solely on who created it. See Boehringer, 778 F.3d at 149 ("Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available."); see also Advanced Technology Incubator, Inc. v. Sharp Corp., 263 F.R.D. 395, 399 (W.D. Tex. 2009) (work-product doctrine will not apply to attorney's documents when the attorney acts as "business advisor" rather than as attorney).

[5] In its revised privilege log, defendant provides two separate lists of numbered entries. See Def. Rev. Priv. Log [Dkt. 77]. Upon in camera review, the Court determined that the documents referenced in each list are identical except in their formatting. Accordingly, the Court's ruling as to a communication present in the first set of documents should be viewed as applying with equal force to the corresponding communication in the second set of documents.

| | | | | |
|---|---|---|---|---|
| 4[6] | 126–127 | 6/27/13 at 2:39 p.m. | GRANTED | (1) Business advice; (2) facts exist independent of attorney-client relationship; (3) voluntarily disclosed to plaintiff |
| 5 | 128 | 7/8/13 at 11:33 a.m. | GRANTED | (1) Business advice; (2) facts exist independent of attorney-client relationship |
| 6 | 128 | 11/1/13 at 1:40 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 7 | 128–129 | 11/12/13 at 1:40 p.m. | DENIED | Document prepared because of prospect of litigation and no showing of need |
| 8 | 129–130 | 1/6/14 at 10:23 a.m. | DENIED | Legal advice regarding confidentiality related to suit by plaintiff |
| 9 | 130 | 2/26/14 at 11:19 a.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 10 | 130–131 | 2/26/14 at 11:20 a.m. | DENIED | Document prepared because of prospect of litigation and no showing of need |
| 11 | 131 | 2/27/14 at 11:07 a.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 12 | 131–132 | 2/29/14 at 3:13 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 13 | 133 | 3/25/14 at 4:34 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |

[6] Defendant described this entry as including a June 2013 email from Jayme Falk, an employee of Sunrise, to Jennifer Shilling, an employee of defendant, regarding an itemization of various loan balances. Defendant mistakenly claimed that the entry also included an email exchange between several employees of Arrowood, Sunrise, and defendant regarding a proposed collection suit against plaintiff. This second email exchange is reflected in the document at Privilege Log Number 9 and will be addressed there.

| | | | | |
|---|---|---|---|---|
| 14 | 134 | 3/25/14 at 5:54 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 15 | 135 | 3/26/14 at 2:53 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 16 | 135 | 3/26/14 at 5:43 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 17 | 135–136 | 4/4/14 at 1:42 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 18 | 137 | 5/12/14 at 4:34 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 19 | 137 | 5/12/14 at 4:36 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 20 | 137 | 7/2/14 at 2:05 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 21 | 138 | 8/11/14 at 2:22 p.m. | DENIED | Legal advice regarding preparation of documents for imminent suit against plaintiff |
| 22[7] | 138 | 8/21/14 at 3:17 p.m. | DENIED | Letter to client regarding representation |

Digitally signed by G. Michael Harvey
DN: cn=G. Michael Harvey, o, ou, email=Michael_Harvey@dcd.uscourts.gov, c=US
Date: 2015.07.31 16:02:15 -04'00'
Adobe Acrobat version: 11.0.10

Date: July 31, 2015

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

[7] After providing its revised privilege log, defendant supplemented Privilege Log Number 22 with an actual copy of the letter which was sent from defendant to Arrowood.