**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMETRA BAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>MITCHELL RUBENSTEIN & ASSOCIATES, P.C.,<br><br>Defendant. | Civil Action No. 13-1995 (ABJ) |

**MEMORANDUM OPINION**

On April 1, 2015, pursuant to Local Civil Rule 72.2(a), this case was referred to Magistrate Judge G. Michael Harvey for the resolution of several discovery disputes. Referral to M.J. Order [Dkt. # 67]. The disputes arose when plaintiff propounded discovery requests seeking communications between the defendant, which is a law firm involved in debt collection, and Sunrise Credit Services, Inc. *See* Mem. Op. (July 31, 2015) [Dkt. # 81] at 6–7. Defendant asserts that Sunrise was acting as the agent for Arrowood Indemnity Company, to whom plaintiff owed a debt, when Sunrise retained defendant on Arrowood's behalf to sue on that debt. Def.'s Reply to Pl.'s Resp. to Supp. Privilege Log, Aff. & Errata [Dkt. # 80] at 2 & n.1. Defendant refused to produce the documents plaintiff sought on the grounds that they were privileged communications between an attorney (defendant) and its client (Arrowood), made through the client's agent (Sunrise). *Id.*; *see also* Mem. Op. (July 31, 2015) at 1, 6–7.

On May 20, 2015, plaintiff filed a motion to compel the production of those records and others, objecting to, among other things, defendant's withholding of documents based on "false claims of privilege." Pl.'s Mot. to Compel Produc. of Docs. & Resps. to Interrogs. [Dkt. # 69]

("Pl.'s Mot.") at 1.  On June 29, the Magistrate Judge granted plaintiff's motion in part and denied

it in part, and he ordered defendant to respond to some, but not all, of the disputed discovery

requests.  Order (June 29, 2015) [Dkt. # 75].  He also ordered "that each side shall bear its own

costs related to plaintiff's motion to compel."  *Id.* at 4.  Finally, the Magistrate Judge held

plaintiff's motion to compel in abeyance with respect to defendant's claims of attorney-client and

work-product privilege, and he ordered defendant to produce a revised privilege log to plaintiff

and to submit the allegedly privileged documents for *in camera* review.  *Id.* at 2–3.

      After reviewing the documents, the Magistrate Judge concluded that Sunrise was acting as

Arrowood's agent in its role as intermediary between Arrowood and defendant, and that the

attorney-client privilege could therefore apply to the communications between defendant and

Sunrise.  Mem. Op. (July 31, 2015) at 7–9.  He found that some of the communications defendant

had identified as privileged had "nothing to do with the provisioning or seeking of legal advice,"

a prerequisite to the application of the attorney-client privilege, but that others did.  *Id.* at 10–13.

He also determined that defendant had properly asserted the work-product privilege over two

documents that were prepared in anticipation of litigation over plaintiff's debt.  *Id.* at 13–14.  Thus,

the Magistrate Judge granted the remaining portion of plaintiff's motion to compel in part and

denied it in part, and he ordered defendant to produce five of the twenty-two documents over which

it had asserted the attorney-client and work-product privileges.  Order (July 31, 2015) [Dkt. # 82];

Mem. Op. (July 31, 2015) at 14–15.  He permitted defendant to withhold the seventeen remaining

documents as privileged.  Mem. Op. (July 31, 2015) at 15–16.

      On August 14, 2015, plaintiff filed her objections to the Magistrate Judge's Orders of June

29 and July 31.  Pl.'s Objs. to the Magistrate's June 29, 2015 & July 31, 2015 Orders [Dkt. # 87]

("Pl.'s Objs.").  Plaintiff "objects to the Magistrate's determination that the documents withheld

by the Defendant and identified in the Court's July 31st Order are privilege [sic] based on Defendant's assertion of attorney-client privilege and work product on behalf of an entity not a party to the instant lawsuit." *Id.* at 1. She also objects to the June 29 Order denying her attorneys' fees and costs for the litigation of the discovery dispute. *Id.* at 1–2. Defendant responded to plaintiff's objections on August 21, 2015. Def.'s Resp. to Pl.'s Objs. [Dkt. # 89].

**STANDARD OF REVIEW**

A court may refer nondispositive matters, including discovery disputes, to a magistrate judge for resolution. Fed. R. Civ. P. 72(a); LCvR 72.2(a). Upon referral, the magistrate judge must "promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a); *see also* LCvR 72.2(a). Any party may file written objections to the magistrate judge's decision "within 14 days after being served with the order of the magistrate judge." LCvR 72.2(b); *see also* Fed. R. Civ. P. 72(a). The court shall consider timely objections and "may modify or set aside any portion of a magistrate judge's order . . . found to be clearly erroneous or contrary to law." LCvR 72.2(c); *see also* Fed. R. Civ. P. 72(a).[1] "Under that deferential standard, a magistrate judge's factual findings or discretionary decisions must be affirmed unless, 'although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Am.*

---

1 As she did in her first motion for attorneys' fees, plaintiff asks the Court to apply not only the clear error standard, but also the *de novo* standard of review, and she cites Local Civil Rule 72.2 – the rule under which the discovery disputes were referred – along with Federal Rule of Civil Procedure 72(b)(3) and Local Civil Rule 72.3(c). Pl.'s Objs. at 11; *see also* Pl.'s Objs. to Oct. 24, 2014 Magistrate's R. & R. [Dkt. # 47] at 4. As the Court advised the parties in ruling on the earlier fee motion, which was also referred to a magistrate judge for decision, the proper standard of review for this type of referral is the clearly erroneous or contrary to law standard set forth in Local Civil Rule 72.2(c). *See* Mem. Op. (Jan. 6, 2015) [Dkt. # 55] at 5–6 & n.2.

*Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011), quoting *Fed. Sav. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co.*, 130 F.R.D. 507, 508 (D.D.C. 1990).

## ANALYSIS

### I. The Magistrate Judge's findings that the attorney-client and work-product privileges applied to the contested documents were not clearly erroneous or contrary to law.

After reviewing *in camera* the documents over which defendant asserted privilege, the Magistrate Judge determined that seventeen of the twenty-two documents at issue were protected by the attorney-client and work-product doctrines. Mem. Op. (July 31, 2015) at 10–16. Plaintiff argues that neither privilege applies to the communications between defendant and Sunrise, because Sunrise was not Arrowood's agent and because defendant was acting as a debt collector, and not as an attorney. Pl.'s Objs. at 12–27. But nowhere in her twenty-seven page pleading does plaintiff offer any evidence or authority to show that the Magistrate Judge's determination was clearly erroneous or contrary to law. Instead, her objections simply express her dissatisfaction with the Magistrate Judge's findings of fact and conclusions of law. This is insufficient to satisfy plaintiff's burden, and so the objections will be overruled.

#### A. The Attorney-Client Privilege

Both Maryland and the District of Columbia recognize that the attorney-client privilege protects communications not only between a client and an attorney, but also between their agents.[2] *See, e.g.*, *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 187 & n.4 (D.D.C. 2014) ("[T]he attorney-client privilege shelters confidential communications between an attorney

---

2 Because the Magistrate Judge found that Maryland and District of Columbia law apply the same formulation of the attorney-client privilege, he did not determine which law governed. Mem. Op. (July 31, 2015) at 2–5. The Court agrees that the distinctions between the law applied in the two jurisdictions "make no substantive difference . . . in this case, and so [it] need not make a choice of law." *Cruz v. Am. Airlines*, 356 F.3d 320, 332 (D.C. Cir. 2004).

and client, including their agents, made with a primary purpose of seeking or providing legal advice."), citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014); *Kreuzer v. George Washington Univ.*, 896 A.2d 238, 249 (D.C. 2006) (finding that trial court correctly permitted the University "to invoke the attorney-client privilege to shield communications between its contractor/agent . . . and the University's counsel that were made for the purpose of seeking legal advice"); *Cutchin v. State*, 792 A.2d 359, 364 (Md. 2002) ("The [attorney-client] privilege includes communications to agents employed by an attorney."). "In considering whether a client's communication with his or her lawyer through an agent is privileged under the intermediary doctrine, the 'critical factor' is 'that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.'" *In re Lindsey*, 158 F.3d 1263, 1280 (D.C. Cir. 1998), quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993).

The Magistrate Judge specifically determined that "Sunrise acted as Arrowood's agent for obtaining legal advice from defendant," making the attorney-client privilege enforceable. Mem. Op. (July 31, 2015) at 7–8. Plaintiff objects to this finding, and she contends that Sunrise was not Arrowood's agent and that "at all times relevant Defendant was acting in its capacity as a debt collector and not as an attorney." Pl.'s Objs. at 2–3.

At bottom, most of plaintiff's objections boil down to her claim that defendant failed to offer evidence sufficient to show an agency relationship between Arrowood and Sunrise that would give rise to an attorney-client privilege. *See, e.g.*, *id.* at 2 ("Defendant has not established with evidence that it had an attorney-client relationship with Arrowood as oppose [sic] to a mere debt collector-corporate client relationship during the relevant period."); *id.* at 3 ("[T]hough it is Defendant's burden, Defendant did not prove that Sunrise is a 'forwarder' . . . ."); *id.* at 13 ("[I]t

is not Plaintiff's burden to prove or provide evidence that the attorney-client privilege does not exist but is the Defendant's burden to provide evidence that it does. Defendant did not meet its burden."); *id.* at 24 ("It is solely the Defendant's burden to prove all the facts that led the Magistrate to its conclusions in its July 31st Order. . . . Defendant failed to meet its burden . . . ."). But the Magistrate Judge explicitly recognized that "[t]he party asserting the privilege bears the burden to present the court with facts sufficient to establish the privilege," Mem. Op. (July 31, 2015) at 4, citing *Cutchin*, 792 A.2d at 366, and *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 718 A.2d 1129, 1138 (Md. 1998), and he found that defendant proffered adequate evidence in this case to satisfy that burden. The Court agrees.

A party asserting the attorney-client privilege "must present 'affidavits or other competent evidence' that 'support[s] each of the essential elements necessary to sustain a claim of privilege.'" *Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 38 (D.D.C. 2010), quoting *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000). Defendant provided such evidence in this case. For example, the Magistrate Judge found that "Arrowood hired Sunrise for the limited purpose of finding an attorney to help Arrowood collect plaintiff's debt" based on the record evidence offered by defendant, including two authorizations by Arrowood for Sunrise to retain counsel. Mem. Op. (July 31, 2015) at 8, citing Ex. 4 to Def.'s Opp. to Pl.'s Mot. [Dkt. # 72-2] at 42 (January 23, 2013 "Authorization for Suit" given by Arrowood to Sunrise in plaintiff's case), and Ex. 4 to Def.'s Opp. to Pl.'s Mot. [Dkt. # 72-3] at 64 (October 25, 2012 "Authorization for Suit"). Defendant also submitted an affidavit describing its relationship with Arrowood and Sunrise. Ex. 5 to Def.'s Opp. to Pl.'s Mot. [Dkt. # 73-4] ¶¶ 4–5 (stating that "[d]efendant was retained to pursue collection of student loan accounts owed by the Plaintiff to Arrowood" and that "[r]eferral of the matters for collection in litigation was made by Arrowood's authorized agent Sunrise").

Upon review of defendant's submissions, the Magistrate Judge determined that the record "does not reflect that Sunrise ever undertook direct collection actions against plaintiff such as sending a dunning letter or making collection calls,"[3] and therefore, that "Sunrise's role appears limited to that of an intermediary between Arrowood and defendant." Mem. Op. (July 31, 2015) at 7. In other words, he concluded that "Sunrise was hired by Arrowood specifically as a 'forwarder' to locate a debt collection counsel."[4] *Id.* at 8. "[A]lthough defendant's communications passed through Sunrise to Arrowood," he found, "the presence of an intermediary does not destroy the confidential relationship between Arrowood and defendant." *Id.* at 8–9, citing

---

3 Plaintiff insists that "Sunrise absolutely engaged in direct collection against the Plaintiff '[by] sending a dunning letter [and] making collection calls,'" and that Sunrise was "a full-fledged debt collector that vigorously pursued collection of the alleged debt from Plaintiff prior to hiring the Defendant to intensify its efforts." Pl.'s Objs. at 3–4, quoting Mem. Op. (July 31, 2015) at 7. But she offers absolutely no evidence in support of these assertions that would permit this Court to find that the Magistrate Judge's conclusion on this issue was clearly erroneous.

4 The Magistrate Judge relied on the definition of "forwarder" set forth in a recent decision by the Supreme Court of Michigan. Mem. Op. (July 31, 2015) at 7, citing *Badeen v. PAR, Inc.*, 853 N.W.2d 303, 304–05 (Mich. 2014). That court described "forwarders" as "middlemen" who "operate as intermediaries between creditors and local collection agents" by "obtaining assignments of unpaid accounts from creditors and then allocating the collection of those accounts to local collection agents," but "do not . . . contact debtors themselves." *Badeen*, 853 N.W.2d at 304. The Court finds that it was not clearly erroneous or contrary to law for the Magistrate Judge to find that Sunrise acted as a "forwarder" for Arrowood when it located and hired defendant as debt-collection counsel and when it communicated with defendant on Arrowood's behalf.

*Kreuzer*, 896 A.2d at 249, and *DeVetter v. Alex. Brown Mgmt. Servs., Inc.*, No. 24-C-03-007514, 2006 WL 1314014, at *7 (Md. Cir. Ct. Mar. 22, 2006).[5]

Plaintiff complains that defendant failed to meet its evidentiary burden on the issues of its role as an attorney and the agency relationship between Sunrise and Arrowood, but she has not cited to any contrary evidence in the record or any persuasive legal authority to show that the

5 The Court notes that the *DeVetter* decision does not appear to stand for the proposition for which it was cited. In that case, several discovery disputes were referred to a Special Master, who concluded that the attorney-client privilege protected communications between the plaintiffs, their financial advisors, and the counsel they hired. *DeVetter*, 2006 WL 1314014, at *7–*10. The Special Master wrote, "[t]he intermediary doctrine essentially applies the cloak of the attorney/client privilege to communications between a client and counsel under certain circumstances even though those communications are through a third-party intermediary." *Id.* at *7–*8. But the presiding judge rejected the Special Master's recommendation, stating that the intermediary doctrine had "never been extended by a Maryland court to a situation where the client specifically retains a third party to communicate with counsel" in the "business context." *Id.* at *1. So the *DeVetter* opinion does recognize that the privilege can operate through an intermediary, but the court declined to apply the doctrine to the facts presented.

The *DeVetter* case can be distinguished from the present situation. In *DeVetter*, the plaintiffs initially hired the intermediaries to provide them with financial advice and services. *Id.* at *4. After the fund the financial advisors oversaw suspended all redemptions, the plaintiffs then asked the advisors to "assist them in retaining counsel to investigate the Fund's alleged failure and with respect to any claims [the] Plaintiffs might assert against the Fund." *Id.* But here, neither the intermediary nor the law firm was performing a business or a mixed function. The Magistrate Judge determined that Sunrise's role was solely that of an intermediary between Arrowood and the defendant law firm, that Sunrise was hired with the exclusive goal of "obtaining legal advice from defendant," and that defendant was acting only in a legal capacity during the relevant communications. *See* Mem. Op. (July 31, 2015) at 8 ("[D]efendant provided its legal services for the benefit of Arrowood."); *see also, e.g.*, *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 91 (D. Md. 2003) (rejecting claims of attorney-client privilege based on intermediary doctrine where the third-party accounting firm's primary role was "providing hybrid advice to plaintiff – tax and business advice which by its nature, had a legal component," but which was not "primarily to assist the plaintiff's attorneys in rendering legal advice"). So while the *DeVetter* opinion – assuming it was correctly decided – does not directly support the Magistrate Judge's ruling, given the weight of other applicable authority and the evidentiary record in this case, the Court does not find that the reliance on *DeVetter* renders the Magistrate Judge's decision clearly erroneous.

Magistrate Judge's decision should be overturned.[6] "Whether an agency relationship exists in a given situation depends on the particular facts of each case," *A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F. Supp. 2d 168, 175 (D.D.C. 2011), quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000), and the Magistrate Judge found that defendant proffered sufficient evidence in this case to show that an agency relationship existed between Arrowood and Sunrise, and that defendant was acting as an attorney in its communications with Sunrise on Arrowood's behalf. The Court does not get to examine *de novo* the rulings made by the Magistrate Judge; rather, under Rule 72.2(c), the Court may revisit the July 31, 2015 Order only where it is "clearly erroneous or contrary to law." LCvR 72.2(c); Fed. R. Civ. P. 72(a); *see also Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 441 (D. Md. 2005) (holding that a magistrate judge's finding that an agent's role "consisted of 'transmitting information' and 'facilitating communication' is a factual finding entitled to significant deference"). The Court does not find any such error here.

Plaintiff further argues that no attorney-client privilege can exist where the client, and not the attorney, is the one responsible for hiring the agent. Pl.'s Objs. at 4–6, 21 (arguing that in the

---

6 Plaintiff contends that the cases cited by the Magistrate Judge "go the other way" on the issue of whether a forwarding company can qualify as an agent for attorney-client privilege purposes. Pl.'s Objs. at 5, 7. But plaintiff fails to clarify how many of those cases are contrary to the Magistrate Judge's ruling, and a review of those decisions by this Court shows that they do not affect the end result in this case. *See, e.g.*, *Jones v. United States*, 828 A.2d 169, 176–77 (D.C. 2003) (finding that criminal defendant had failed to establish attorney-client privilege with respect to conversations with his then-girlfriend, who happened to be an attorney); *Crane v. Crane*, 614 A.2d 935, 940–41 (D.C. 1992) (Terry, J., concurring) (suggesting that conversations between a party and his attorney might not be privileged if the attorney was "merely assisting the husband in the conduct of his business affairs"); *Adams v. Franklin*, 924 A.2d 993, 1000 (D.C. 2007) (finding that attorney was subject to deposition on certain topics because communications were either not from client or were not intended by client to be confidential). The Magistrate Judge specifically distinguished other cases, like *E.I. du Pont*, from the present case in reaching his conclusion, *see* Mem. Op. (July 31, 2015) at 8–9, and the last case, *DeVetter*, is distinguishable for the reasons stated in note 5, *supra*. So the Court finds that plaintiff has failed to point to any contrary legal authority that would warrant overturning the Magistrate Judge's discovery order.

cases cited by the Magistrate Judge, "it was the lawyer not the client that hired or brought in the agent/third party"). But the cases she cites do not stand for that proposition, and the D.C. Circuit has made clear that "[w]here the client is an organization, the privilege extends to those communications between attorneys and *all agents or employees of the organization* who are authorized to act or speak for the organization in relation to the subject matter of the communication." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977) (emphasis added); *see also Murphy*, 233 F.R.D. at 438 (affirming Magistrate Judge's finding that intermediary doctrine "applies to agents of the client as well as agents of the attorney" for purposes of the attorney-client privilege), citing *In re Lindsey*, 158 F.3d 1263.

Plaintiff also argues that because "the Magistrate conclude[d] that Sunrise was hired by Arrowood for the business purpose of debt collection," the attorney-client privilege requirement "that legal advice be sought 'from a professional legal advisor in his capacity as such' has not been met" as between Arrowood and Sunrise. Pl.'s Objs. at 7. The Magistrate Judge never reached such a conclusion. *See* Mem. Op. (July 31, 2015) at 8 ("Arrowood hired Sunrise for the limited purpose of finding an attorney to help Arrowood collect plaintiff's debt."). And even if plaintiff were correct about why *Sunrise* was originally hired, her assertion does not affect the Magistrate Judge's finding that *defendant* was hired as an attorney by Sunrise on Arrowood's behalf.

Plaintiff devotes a considerable number of pages in her objections to arguing that Sunrise's communications *with Arrowood* cannot be subject to the attorney-client privilege for a multitude of reasons, including that Sunrise was acting as a debt collector and not a forwarder, that it was engaging in illegal business practices, and that Arrowood had no reasonable expectation of confidentiality in its communications with Sunrise, who plaintiff repeatedly asserts was "an unrelated third party." *See* Pl.'s Objs. at 3–9, 12–22. But this misses the point: plaintiff was not

seeking, and defendant did not attempt to protect, communications between Arrowood and Sunrise. Rather, defendant only asserted the attorney-client privilege over communications between defendant and Sunrise after defendant had been retained as counsel by Sunrise on Arrowood's behalf. *See* Def.'s Revised Privilege Log [Dkt. # 77] at 1–6.

The Magistrate Judge's comparison of the *E.I. du Pont* case to the facts underlying the instant dispute demonstrates why this distinction is significant. *See* Mem. Op. (July 31, 2015) at 8–9, citing 718 A.2d at 1141–42. In that case, DuPont, the plaintiff corporation, referred a debt-collection action to its in-house legal department, which then hired Kaplan, a collection agency, which in turn hired Peck, an attorney, to collect the debt owed to DuPont by Forma-Pack, the debtor. *E.I. du Pont*, 718 A.2d at 1132. Forma-Pack sought to depose and obtain documents from Kaplan, and DuPont moved for a protective order on the grounds that the communications between its in-house legal department and Kaplan were subject to the attorney-client privilege. *Id.* The Maryland Court of Appeals summarized the relationship of the parties as follows:

> [T]he attorney is DuPont's in-house legal department, and it is invoking the privilege on behalf of its client, DuPont the corporation. Kaplan is the non-lawyer collection agency that the DuPont legal department hired to collect the Forma-Pack debt, and DuPont is alleging that Kaplan is its agent for purposes of litigation (and that Peck is a subagent). Peck is the attorney that Kaplan, not DuPont, eventually hired to litigate the debt collection matter after Kaplan's efforts proved unsuccessful.

*Id.* at 1141.

The Court of Appeals concluded that "no attorney-client relationship existed" between DuPont's legal department and Kaplan and that therefore, their communications were not protected by the privilege, because "[w]hen DuPont, the corporate client, consulted with its attorney, the legal department, it was not doing so for legal advice regarding the Forma-Pack debt," but instead "was simply routing the debt collection matter to its legal department, which in turn was to transmit

it to an outside, non-lawyer collection agency." *Id.* at 1141–42. And it found that "when DuPont hired Kaplan it was not for the purposes of instituting legal action; instead, DuPont was consulting with Kaplan in a business capacity, for the typical business purpose of collecting a debt." *Id.* at 1142. The court also noted that because "Kaplan is not authorized to practice law, there is no possibility of DuPont's legal department claiming that it is the client and Kaplan is the attorney, via Peck as its subagent, for purposes of establishing the attorney-client privilege." *Id.* at 1141 n.5. It emphasized that a "critical fact is that Kaplan, the party from whom discovery is being sought . . . is not asserting the attorney-client privilege." *Id.* at 1141.

In contrast, plaintiff here is not seeking communications between the creditor-client (Arrowood), and the collection agency (Sunrise); she is seeking communications between the attorney (defendant) and the collection agency (Sunrise), made on behalf of the creditor-client (Arrowood). The Magistrate Judge specifically found that when Sunrise hired defendant on Arrowood's behalf, it was not "in a business capacity," as the plaintiff's use of its in-house counsel was in *E.I. du Pont*; it was for the specific purpose of obtaining legal advice and procuring legal services. *See* Mem. Op. (July 31, 2015) at 7–8. And in contrast to the collection agency in *E.I. du Pont*, defendant here is an attorney, is authorized to practice law, and is the one asserting the privilege over documents in its possession on its client's behalf. Thus, the Court finds that it was not clearly erroneous for the Magistrate Judge to determine, based on *E.I. du Pont* and other cases, that an attorney-client relationship existed in this case and that the communications between Sunrise and defendant were subject to the attorney-client privilege.

Finally, plaintiff also insists that the Magistrate Judge erred in concluding that the alleged unauthorized practice of law by Sunrise was not relevant to the application of the attorney-client privilege. Pl.'s Objs. at 22–24. She argues that "Sunrise engaged in fraud by practicing law

without a license and the communications at issue were made in furtherance of the fraud and thus are not privileged." *Id.* at 23. On that point, the Magistrate Judge found that, "[a]ssuming without deciding that Sunrise engaged in the unauthorized practice of law, plaintiff fails to explain why such wrongdoing by Sunrise should serve to waive or eliminate Arrowood's attorney-client privilege." Mem. Op. (July 31, 2015) at 9. The Court agrees – plaintiff offers no legal authority to support her contention that *Arrowood*'s attorney-client privilege with defendant could be voided by *Sunrise*'s unauthorized practice of law. *See* Pl.'s Objs. at 22–24. Thus, she has failed to show that the Magistrate Judge committed a clear error or that his decision was contrary to law, and her objection on this ground will be overruled.

**B. The Work-Product Privilege**

The Magistrate Judge also determined that the two documents over which defendant asserted the work-product privilege "were made because of the prospect of litigation against plaintiff," and that plaintiff had not made a showing of need which would permit discovery of those documents because she "made no attempt at showing need for these documents" in her response to defendant's revised privilege log. Mem. Op. (July 31, 2015) at 13. Plaintiff objects that "[t]here is no work product immunity because Arrowood never sought Defendant's services to bring a lawsuit against the Plaintiff, litigation was not imminent and no lawsuit was ever brought." Pl.'s Objs. at 25. She contends that the alleged work product documents were not prepared in anticipation of litigation, but as part of a "strategic decision by the Defendant to file a lawsuit against Plaintiff in an effort to gain leverage for itself in the instant lawsuit." *Id.* at 26.

But once again, plaintiff's objections are based solely on her disagreement with the Magistrate Judge's factual and evidentiary findings that defendant proffered sufficient support for its claims of work-product protection and that the documents in question were prepared in

anticipation of legal action. *Id.* at 25 ("[Defendant] has only produced hearsay by way of documents purporting to be contracts along with its self-serving interpretation of said hearsay. . . . the Defendant has not met its burden."); *id.* at 26 ("Defendant has not produced any evidence proving that Arrowood, as oppose [sic] to Sunrise, intended it to file a lawsuit against Plaintiff or that a lawsuit against Plaintiff was imminent."). Instead of offering any contrary evidence or legal authority that would show that the Magistrate Judge's findings were clearly erroneous or contrary to law, plaintiff simply speculates as to the implications of defendant's pay structure and its motives in initiating legal action against plaintiff. *Id.* at 25–26. These unsupported and conclusory allegations fail to leave the Court "with the definite and firm conviction that a mistake has been committed.'" *Ambush*, 794 F. Supp. 2d at 129, quoting *Commonwealth Land Title Ins. Co.*, 130 F.R.D. at 508. Thus, plaintiff's objection to the Magistrate Judge's conclusion on the applicability of the work-product privilege will be overruled.

## II. The Magistrate Judge's determination that plaintiff was not entitled to attorneys' fees and costs was not clearly erroneous or contrary to law.

Plaintiff also objects to the Magistrate Judge's June 29, 2015 Order, in which he denied plaintiff's request for attorneys' fees and costs for the litigation of the discovery disputes. Pl.'s Objs. at 26–27.

At the outset, the Court questions whether plaintiff's challenge to this aspect of the Magistrate Judge's ruling is timely. Written objections to a magistrate judge's ruling must be filed "within 14 days after being served with the order of the magistrate judge." LCvR 72.2(b). Plaintiff was electronically served with the Magistrate Judge's opinion when it was docketed on June 29, 2015, meaning that any objections to that order would have been due by July 13, 2015. Plaintiff's objections were not filed until more than a month later.

Plaintiff contends that because "the June 29th Order was interlocutory and the July 31, 2015 Order was the final Order for purposes of filing Plaintiff's objections, said objections are timely as to both Orders."  Pl.'s Objs. at 1.  But nothing in the June 29 Order supports plaintiff's contention that it was not final.  The Magistrate Judge specifically ordered "that each side shall bear its own costs related to plaintiff's motion to compel," and he held in abeyance only that portion of plaintiff's motion to compel which related to "defendant's claims of privilege and as to plaintiff's document request number 25."  Order (June 29, 2015) at 3–4.  In other words, the only issue left for determination after June 29 was the validity of defendant's assertions of privilege; plaintiff's fee request had already been ruled upon and the Magistrate Judge found that she was not entitled to compensation for the motion to compel.  *Id.*  Accordingly, plaintiff's objections to the June 29, 2015 Order were not timely, and the Court could overrule them on that ground alone.

And in any event, plaintiff has not shown that the decision to deny her attorneys' fees and costs was clearly erroneous or contrary to law.  Plaintiff contends that her motion to compel "result[ed] in the Magistrate ordering the Defendant to produce most of the information requested by plaintiff," and that she therefore "is entitled to her expenses and attorney fees" pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).  Pl.'s Objs. at 27.  That rule provides that "*[i]f the motion is granted* . . . the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  But the mandatory language of Rule 37(a)(5)(A) is clearly not applicable to the instant motion to compel, which the Magistrate Judge only granted in part.  *See* Order (June 29, 2015); *see also* Order (July 31, 2015).  Rather, the relevant rule is Rule 37(a)(5)(C), which states that, "[i]f the motion is granted in part and denied

in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

So plaintiff's claim that she is "entitled" to fees under Rule 37(a)(5)(A) is simply incorrect as a matter of law, as her motion to compel was at best only partially successful. That is especially true for the documents over which defendant asserted the attorney-client and work-product privileges: the Magistrate Judge ultimately required defendant to produce only five of the twenty-two documents over which defendant had asserted the privileges. *See* Order (July 31, 2015) at 14–16. And of those five documents, four had already been voluntarily disclosed to the plaintiff, which was part of the reason the Magistrate Judge gave for ordering their disclosure. *Id.* at 10–12. Thus, the Court finds that it was well within the Magistrate Judge's discretion under Rule 37(a)(5)(C) to decline to award plaintiff attorneys' fees for the motion to compel.[7]

Furthermore, there has already been a sizeable fee awarded in this case for a $1,001.00 recovery on a federal claim. *See* Order (Jan. 6, 2015) [Dkt. # 54] (granting plaintiff $41,989.80 in attorneys' fees); *see also* Minute Order (Mar. 11, 2015) ("The Court wishes to underscore the fact that the fee issue has since been resolved, and the sole remaining claims in this case arise under District of Columbia law and not the federal statute with the mandatory fee provision."). In the Court's view, the tail has been wagging the dog for some time in this case, and awarding more

7 Even if the mandatory provision of Rule 37(a)(5)(A) did apply, that rule is subject to an important exception: a court "must not order" payment of the movant's reasonable expenses if "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(iii). "The Supreme Court has stated that a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999), quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Here, since the Magistrate Judge ordered defendant to respond to only some of the disputed discovery requests, and ordered defendant to produce only one of the twenty-two records that had not already been voluntarily produced, the Court finds that defendant was substantially justified in its objections to plaintiff's discovery request and its withholding of the documents sought.

fees for the unduly contentious and overly lengthy pleadings that have proliferated on this docket is not warranted.

For those reasons, plaintiff's objection to the Magistrate Judge's finding that plaintiff was not entitled to attorneys' fees and costs for the litigation of the motion to compel is overruled.

**CONCLUSION**

Because plaintiff has not demonstrated that the June 29, 2015 and July 31, 2015 Orders regarding the application of the attorney-client and work-product privileges and plaintiff's entitlement to attorneys' fees and costs were clearly erroneous or contrary to law, plaintiff's objections are hereby **OVERRULED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: September 17, 2015