**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
DEMETRA BAYLOR,                             )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        Civil Action No. 13-1995 (ABJ)
                                            )
MITCHELL RUBENSTEIN &                       )
ASSOCIATES, P.C.,                           )
                                            )
                    Defendant.              )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Demetra Baylor brought this case against defendant Mitchell Rubenstein &

Associates, P.C., alleging that defendant violated various provisions of the Fair Debt Collection

Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the D.C. Debt Collection Law, D.C. Code § 28-

3814 *et seq.*, and the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3901 *et seq.*

Compl. ¶¶ 28–48 [Dkt. # 1].  The federal count was resolved by the parties with a $1,001.00 offer

of judgment, *see* J. on Offer & Acceptance [Dkt. # 14], and a number of the D.C. claims were

dismissed, but plaintiff's claims under sections 28-3814(f)(5) and 28-3814(g)(5) of the Debt

Collection Law remain.  *See* Order (July 8, 2014) [Dkt. # 26].  Now that discovery has been

completed, defendant has moved for summary judgment on those two claims, and plaintiff has

cross-moved for partial summary judgment.  Def.'s Mot. for Summ. J. [Dkt. # 84] ("Def.'s Mot.");

Br. in Supp. of Def.'s Mot. [Dkt. # 84-1] ("Def.'s Mem."); Pl.'s Partial Mot. for Summ. J. [Dkt.

# 91] ("Pl.'s Mot."); Mem. in Supp. of Pl.'s Mot. [Dkt. # 91-1] ("Pl.'s Mem.").  Because the Court

finds based on the evidentiary record that there is no genuine dispute of material fact as to whether

defendant acted willfully in connection with any inaccurate communications covered by the Debt

Collection Law, it will deny plaintiff's partial motion for summary judgment, and it will grant defendant's motion for summary judgment and dismiss this case in its entirety.

## BACKGROUND

The Court has described the factual background of this case and its extensive procedural history in several previous opinions.  *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, No. 13-1995 (ABJ), 2015 WL 5466637, at *1–*2 (D.D.C. Sept. 17, 2015); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 77 F. Supp. 3d 113, 115–17 (D.D.C. 2015); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43, 46–48 (D.D.C. 2014).  For the purposes of the pending motions for summary judgment, it restates only the facts and history necessary to the resolution of plaintiff's remaining claims.

### I.    Factual Background

Plaintiff graduated from the Pratt Art Institute in Brooklyn, New York in 2004, with a Master's degree in computer graphics.  Dep. of Demetra Baylor (Dec. 16, 2014), Ex. 1 to Def.'s Mot. [Dkt. # 84-2] ("Baylor Dep.") 13:3–13.  To finance her education, she took out six separate student loans, in addition to paying some of her tuition out of pocket.  *Id.* 14:17–22; Ex. 2 to Def.'s Mot. [Dkt. # 84-3] (documentation of plaintiff's student loan applications); Def.'s Statement of

Undisputed Facts [Dkt. # 96] ("Def.'s SOF") ¶ 1.[1]  Plaintiff has not paid back those loans in full. Baylor Dep. 15:3–8; Def.'s SOF ¶ 2.

In February 2013, plaintiff received a letter from defendant,[2] dated February 21, 2013, notifying her that she owed an alleged debt of $26,471.07 to the creditor Arrowood Indemnity Company, and that plaintiff's account "ha[d] been referred to [defendant's] office for collection." Feb. 21, 2013 Letter to Pl., Ex. E to Compl. [Dkt. # 1-1] ("Ex. E to Compl.").  The letter also noted

---

[1]     While defendant referred to a statement of undisputed material facts in the memorandum filed in support of its motion, *see* Def.'s Mem. at 1–8, there was no statement attached as required by Local Civil Rule 7(h)(1).  *See* LCvR 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue.").  In her opposition, plaintiff complained about the omission, and she objected to defendant's references to the Statement of Facts on the grounds that no record citations had been provided in an accompanying statement. Pl.'s Opp. to Def.'s Mot. [Dkt. # 90] ("Pl.'s Opp.") at 1, 4–5.  After plaintiff drew attention to this oversight, defendant sought leave to file its statement of undisputed facts retroactively, explaining that the document "was inadvertently not attached" to its motion. Br. in Supp. Mot. for Extension of Time to Allow Def. to File Statement of Undisputed Facts in Supp. of Def.'s Mot. [Dkt. # 94-1] at 1.  The Court granted the motion, and it also permitted plaintiff to "file a response to defendant's statement of undisputed facts, which comports with the Court's Local Civil Rules and this Court's scheduling order," along with her cross-reply in support of her partial motion for summary judgment. Min. Order (Sept. 3, 2015).

In her cross-reply, plaintiff persisted in her position that "Defendant's Motion should be denied for failing to comply with Local Civil Rule 7(h)(1)." Pl.'s Reply to Def.'s Reply [Dkt. # 103] ("Pl.'s Cross-Reply") at 3.  Since defendant referred to the statement repeatedly in its memorandum, the Court credits counsel's explanation that it was omitted inadvertently.  And in any event, the Court considered this issue previously and granted defendant leave to file the statement late.  Because any potential prejudice to plaintiff was cured when she was permitted to respond to the statement in her cross-reply, the Court will not deny defendant's motion or grant plaintiff's on this ground.  Moreover, the Court notes that notwithstanding the order that permitted plaintiff to file a responsive statement in connection with her cross-reply, she failed to do so.

[2]     The letter was sent by "Rubenstein & Cogan," but the Court previously held that "Rubenstein & Cogan is not a separate legal entity, but is instead the trade name of defendant Mitchell Rubenstein & Associates." *Baylor*, 55 F. Supp. 3d at 49.  Since Rubenstein & Cogan has been dismissed from this action, and the Court concluded that the entities were the same in any event, the Court will refer only to Mitchell Rubenstein & Associates as the debt collector and defendant in this Memorandum Opinion.

that the debt was linked to defendant's file number R80465, and that the amount due could change based on "interest, late charges, and other charges that may vary from day to day." *Id.*

Plaintiff disputed the debt and sent defendant a letter dated March 21, 2013. Mar. 21, 2013 Letter to Def., Ex. F to Compl. [Dkt. # 1-1]. She requested verification of the debt, and specifically sought the following information: "the owner of [the] debt;" defendant's "connection with collecting this debt;" and "an itemization of how [the] amount was calculated and where it came from and a clear breakdown of all fees, interest and other charges." *Id.*

Defendant responded in a letter dated March 26, 2013. Mar. 26, 2013 Letter to Pl., Ex. D to Compl. [Dkt. # 1-1] ("Ex. D to Compl."). The letter itemized the original disbursements to plaintiff that comprised the debt, which totaled $26,716, and specified the rate of interest that accrued per annum. *Id.* The letter advised that the total pay off amount through July 28, 2011 came to $31,268. *Id.*

Plaintiff then obtained counsel, and her attorney sent a letter to defendant on May 21, 2013, advising defendant that plaintiff had retained her in reference to the debt connected with defendant's file number R80465 and repeating plaintiff's request for information associated with the debt collection. May 21, 2013 Letter to Def., Ex. B to Compl. [Dkt. # 1-1]. The letter included a request that defendant "not contact [her] client in reference to this matter" and instructed that "[a]ny future communications regarding this matter should be directed to [counsel's] firm." *Id.*

Plaintiff's counsel then entered into settlement negotiations with defendant. Def.'s SOF ¶ 12; Decl. of Mitchell Rubenstein, Ex. 3 to Def.'s Mot. [Dkt. # 84-4] ("Rubenstein Decl.") ¶ 17. On July 8, 2013, plaintiff's counsel informed defendant that plaintiff owed three additional loans that were not referenced in the March 26, 2013 letter, and she represented that plaintiff wanted to settle all six of her outstanding loans. Def.'s SOF ¶ 12; Rubenstein Decl. ¶¶ 18–19. As a result,

defendant requested that the remaining three loans be referred to it so that the parties could negotiate a settlement.  Def.'s SOF ¶ 13; Rubenstein Decl. ¶ 19.

On August 22, 2013, defendant sent another letter to plaintiff concerning the additional amounts due with a different file number, R83798, and listing the creditor as Tuitionguard Arrowood Indemnity.  Aug. 22, 2013 Letter to Pl., Ex. A to Compl. [Dkt. # 1-1] ("Ex. A to Compl.").  The letter was addressed to "Radi Dennis Consumer Justice ESQ, 1014 Florida Avenue, NE Apartment 1, Washington DC 20002," naming plaintiff's attorney as the addressee but utilizing plaintiff's address, and it began "Dear Ms. Baylor."  *Id.*  The letter stated that plaintiff owed a debt of $27,459.48, and that the amount due was subject to change based on "interest, late charges and other charges that may vary from day to day."  *Id.*

Plaintiff's counsel responded to the August 22 letter on September 12, 2013.  Sept. 12, 2013 Letter to Def., Ex. G to Compl. [Dkt. # 1-1].  Counsel informed defendant that plaintiff disputed the debt, and she requested verification of the debt that was described in the August 22 letter and was associated with defendant's file number R83798.  *Id.*  The letter further reminded defendant that plaintiff was represented by counsel and should not be contacted directly.  *Id.*

Defendant responded to counsel's September 12 letter on September 26, 2013.  Sept. 26, 2013 Verification Letter to Pl., Ex. C to Compl. [Dkt. # 1-1] ("Ex. C to Compl.").  The September 26 letter, which was addressed to counsel at her office address, stated that the amount due for the debt contained in defendant's file number R83798 was "$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid."  *Id.*

## II.    Procedural History

Plaintiff filed the three count complaint in this case on December 17, 2013.  Compl.  On January 14, 2014, defendant moved to dismiss plaintiff's claims pursuant to Rule 12(b)(6).  Def.'s

Mot. to Dismiss Compl. [Dkt. # 7]. While that motion was pending, plaintiff accepted an offer of judgment from defendant on her FDCPA claim. Pl.'s Notice of Acceptance of Def.'s Rule 68 Offer of Judgment [Dkt. # 11]. The Court then granted defendant's motion to dismiss all of plaintiff's claims under the D.C. Consumer Protection and Procedures Act and some, but not all, of her D.C. Debt Collection law claims. Order (July 8, 2014); *see also Baylor*, 55 F. Supp. 3d 43.

After an extremely long and contentious discovery process, which required several telephone conferences with the Court and the assistance of a Magistrate Judge, *see, e.g.*, *Baylor*, 2015 WL 5466637 (overruling plaintiff's objections to Magistrate Judge's order entered pursuant to Local Civil Rule 72.2(a)), discovery was completed on August 7, 2015, *see* Order (July 31, 2015) [Dkt. # 82], and defendant filed its motion for summary judgment on August 6, 2015. Def.'s Mot. On August 31, 2015, plaintiff filed an opposition to defendant's motion and a separate partial cross-motion for summary judgment. Pl.'s Opp. to Def.'s Mot. [Dkt. # 90] ("Pl.'s Opp."); Pl.'s Mot. Defendant filed a combined reply in support of its motion and a cross-opposition to plaintiff's partial motion on September 10, 2015, Def.'s Combined Opp. to Pl.'s Mot. & Reply to Pl.'s Opp. [Dkt. # 97] ("Def.'s Reply"), and plaintiff filed her cross-reply on September 28, 2015. Pl.'s Reply to Def.'s Reply [Dkt. # 103] ("Pl.'s Cross-Reply"). On October 2, 2015, with leave of the Court, Min. Order (Oct. 2, 2015), defendant filed a cross-surreply, addressing the limited issue of the admissibility of the errata sheet to plaintiff's deposition transcript. Def.'s Surreply to Pl.'s Cross-Reply [Dkt. # 106] ("Def.'s Surreply").

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson,* 477 U.S. at 247.

**ANALYSIS**

Under the D.C. Debt Collection Law, a debt collector is prohibited from making "any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding." D.C. Code § 28-3814(f)(5). Further, a debt collector cannot engage in "any communication with a consumer wherever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known." *Id.* § 28-3814(g)(5). Importantly, only "[p]roof, by substantial evidence, that a creditor or debt collector has *willfully* violated" a provision of the Debt Collection Law "shall subject such creditor or debt collector to liability." *Id.* § 28-3814(j)(1) (emphasis added).

Defendant appears to concede that its communications with plaintiff created confusion concerning the amount of her debt because certain letters included interest and others did not, and that it sent the August 22 letter to plaintiff directly, after defendant was aware that she had retained counsel. *See* Def.'s Mem. at 2, 5–6. But it explains that those mistakes were inadvertent, and it moves for summary judgment on the grounds that no genuine dispute of material fact exists as to whether it committed a willful violation of the Debt Collection Law in its communications with plaintiff. *Id.* at 4–6; Def.'s Reply at 8–11.[3] Plaintiff has opposed defendant's motion, *see* Pl.'s

---

3       Defendant does not concede that its communications with the plaintiff were false, but it is only seeking summary judgment on grounds that plaintiff cannot establish the willfulness element.

8

Opp.,[4] and she also has cross-moved for summary judgment on the matter of the willfulness of defendant's conduct.  Pl.'s Mot.; Pl.'s Mem.

The D.C. Code does not define the term "willfully," and neither the D.C. Circuit nor the D.C. Court of Appeals appears to have interpreted the term as it is used in the Debt Collection Law.  However, the Supreme Court has provided some guidance in the context of the Fair Credit Reporting Act (FCRA), a similar consumer protection statute:  "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see also Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 47 n.12 (D.D.C. 2008) ("In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and

---

[4]     Plaintiff opposed the motion but also advanced the argument that "[w]ithout further discovery . . . [she] cannot adequately gather and present facts essential to counter Defendant's claims and provide evidence regarding her own claims."  Pl.'s Opp. at 2.  While plaintiff did not file a formal motion pursuant to Federal Rule of Civil Procedure 56(d) asking the Court to defer ruling on the motion for summary judgment and to authorize further discovery, the Court will consider this statement in plaintiff's opposition as if it were a Rule 56(d) motion.  *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").  But defendant's motion for summary judgment was filed at the end of a full discovery period, not the beginning, and plaintiff filed her own partial cross-motion for summary judgment on the same issue of defendant's willfulness.  And plaintiff has entirely failed to support her request with the required affidavit or declaration, and she does not offer the sort of specific reasons that would permit the Court to find that delaying the resolution of this matter to permit additional discovery would be justified, especially in light of the length and breadth of discovery that has already taken place in this case.  To the extent that there is an outstanding discovery dispute regarding the adequacy of the disclosures made by defendant as a result of the Magistrate Judge's discovery orders, *see* Pl.'s Opp. at 1–2, the Court's Scheduling Order sets forth a procedure for resolving those disputes, *see* Scheduling Order [Dkt. # 33] at 2, and plaintiff has not raised any discovery issues with the Court through this procedure.  So, insofar as plaintiff's request can be construed as a Rule 56(d) motion, it will be denied.

'intentional.'"), quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).[5]  The Court finds that to be the appropriate standard here, and it concludes that the record shows that defendant's conduct in this case did not meet that standard.

**I.      The undisputed material facts show that defendant did not commit a willful violation of D.C. Code § 28-3814(f)(5) when it misstated the amount of plaintiff's debt in its communications with plaintiff.**

Section 28-3814(f)(5) of the Debt Collection Law prohibits a debt collector from willfully making "any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding."  D.C. Code § 28-3814(f)(5).  Plaintiff claims that defendant violated this provision "by giving a false representation as to the amount of the alleged debt multiple times in multiple letters."  Compl. ¶ 32(c).

A review of the communications in question reveals that the February 21 and March 26 letters – both of which relate to defendant's file number R80465 – express the amount of the debt differently.   *Compare* Ex. E to Compl. (informing plaintiff of a debt of $26,471.07 which could increase once interest is taken into account) *with* Ex. D to Compl. (informing plaintiff of a debt in the amount of $31,268); *see also Baylor*, 55 F. Supp. 3d at 50.  Further, with respect to the August 22 and September 26 letters relating to defendant's file number R83798, although both letters state that the same amount – $27,459.48 – is owed, the August 22 letter warned generally that "[b]ecause

---

5      This is not inconsistent with the definition that plaintiff asks the Court to apply.  She argues that willfulness is satisfied by a showing that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others," but she relies on a District Court opinion interpreting the FCRA that preceded the Supreme Court's authoritative statement in *Safeco*.  Pl.'s Opp. at 5, quoting *Wiggens v. Equifax Servs., Inc.*, 848 F. Supp. 213, 219 (D.D.C. 1993).  Plaintiff also posits that a willful violation of a statute "constitutes an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements."  Pl.'s Mem. at 2–3, quoting *Ensign-Bickford Co. v. Occupational Safety & Health Review Comm'n*, 717 F.2d 1419, 1422 (D.C. Cir. 1983).  But *Ensign-Bickford* dealt with an entirely unrelated statute, the Occupational Safety and Health Act of 1970, *see* 717 F.2d at 1420, and it too preceded *Safeco*.

of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater," the September 26 verification letter states clearly that the amount owed is "$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid." *Compare* Ex. A to Compl. *with* Ex. C to Compl.; *see also Baylor*, 55 F. Supp. 3d at 51.  In 2014, when it was bound to resolve all inferences in favor of the plaintiff, the Court found that these discrepancies were sufficient to state a plausible claim that defendant failed to state the amount of the alleged debts clearly in its collection letters, and it permitted plaintiff to pursue discovery on her claims.  *Baylor*, 55 F. Supp. 3d at 51.

At this point in the proceedings, defendant contends that any inaccuracy or lack of clarity was not willful, and that therefore, the statute does not provide for the recovery of damages.  Def.'s Mem. at 5–6.  Defendant explains that when plaintiff's debt was referred to it for collection by its client, Sunrise Credit Services, Inc., it made a "simple error in relying upon the 'amount referred' as set out in Sunrise's referral forms."  *Id.* at 5.  Defendant maintains that "[a]lthough it turns out that the amount referred did not include accrued interest on the account," and this circumstance led to the mistakes in the February 21 and August 22 letters, such an oversight amounts at most to "simple negligence" and "cannot be deemed to rise to a knowing violation or one made with reckless disregard" of plaintiff's rights under the Debt Collection Law.  *Id.* at 5–6.

Defendant relies upon the declaration of Mitchell Rubenstein, its president, who avers that in his fifteen-year relationship with Sunrise, he had always "found that the 'amount referred' listed in Sunrise's referral form to be accurate statement [sic] as to the present balance owed on the debt."  Rubenstein Decl. ¶¶ 2, 7, 10–11.  He further explains that Sunrise's referral forms for plaintiff's debt associated with file number R80456 "listed the 'amount forwarded' . . . as $26,471.07," and that in relying on that representation, defendant "did not knowingly fail to include accrued interest

on the amount listed of $26,471.07 on the February 21, 2013 letter." *Id.* ¶¶ 8, 13; *see also* Ex. A to Rubenstein Decl. [Dkt. # 84-4] (Sunrise referral form listing $26,471.07 as the "Amount Forwarded"). Indeed, the letter specifically advised the plaintiff that interest and late charges could increase the amount due.[6]  Ex. E to Compl.  When defendant responded to plaintiff's request for verification of the debt on March 26, the accrued interest was added to the amount owed, and that letter informed plaintiff that the total was $31,268.  Rubenstein Decl. ¶ 15; Ex. D to Compl.

Mr. Rubenstein offers a similar explanation concerning the minor difference between the August 22 and September 26 letters:  he states that the second referral from Sunrise was for an "amount referred" of $27,459.48, and that he did "not knowingly fail to include accrued interest on the August 22, 2013 letter or otherwise misstate the amount due on the letter."  Rubenstein Decl. ¶¶ 20, 25; *see also* Ex. D to Rubenstein Decl. [Dkt. # 84-4] (Sunrise referral form listing $27,459.48 as the "Amount Forwarded").  The August 22 letter to the plaintiff informed her of a debt in that amount, and as was the case with the original collection letter in February, the August letter included the caveat that the amount owed could be greater once interest was calculated.  *See*

---

6       It is true that in its Memorandum Opinion denying in part defendant's motion to dismiss plaintiff's claims under the D.C. Debt Collection Law, the Court observed that "defendant['s] reference to interest and late charges does not eliminate the potential for confusion created by the difference in the amounts stated in the two letters."  *Baylor*, 55 F. Supp. 3d at 50.  The Court found that plaintiff had "satisfied her low burden to set forth facts that give rise to a plausible inference that the letters did not fulfill the requirement in section 28-3814(f)(4) that defendants clearly state the amount of the alleged debt."  *Id.* at 51.  In other words, notwithstanding the references to possible additional interest charges, the Court found the series of letters to have been sufficiently inaccurate to fall within the purview of the statute, and it let plaintiff's claim proceed.  But the Court's previous ruling that the general statements concerning the application of interest charges were not enough to defeat plaintiff's claim that the letters were false at that juncture does not mean that the Court cannot consider the fact that the letters put plaintiff on notice that the amount of the debt could go up in connection with another element of plaintiff's case:  whether plaintiff has now established by substantial evidence that defendant willfully violated the statute, *see* D.C. Code § 28-3814(j)(1), or, as plaintiff puts it, whether defendant "knowingly and intentionally committed an act in conscious disregard" for plaintiff's rights.  *See* Pl.'s Opp. at 5.

Ex. A to Compl.  In response to plaintiff's request for verification, defendant sent the September 26 letter, which repeated the amount owed but added "interest that had accrued beginning October 21, 2011 at the rate of 3.75% until paid."  Rubenstein Decl. ¶ 26; Ex. C to Compl.

Plaintiff does not assert that there is any genuine dispute about the fact that the discrepancies between the letters were the result of an innocent mistake.  Instead, she asks the Court to deny defendant's motion for summary judgment and to grant hers on the willfulness issue on the grounds that defendant did not have any procedures in place to prevent such a mistake, and that the lack of such procedures makes defendant's conduct reckless, and therefore willful, for purposes of the Debt Collection Law.

Plaintiff argues:  "[t]o make an inadvertent or accidental error Defendant would first have to have in place procedures reasonably calculated to avoid such error."  Pl.'s Mem. at 3.  She asserts that "[d]efendant does not have a standardized process for verifying the amounts or any of the information contained in its dunning letters and relies on non-attorney employees to come up with numbers on a whim."  *Id.* "Though Defendant is a sophisticated law firms [sic] that is lead [sic] by an attorney with '32 years' of experience it allows non-attorney employees to generate demand letters by entering a code that automatically prints out said demand letter to then be folded and sent to the consumer."  *Id.*  Plaintiff submits that "[t]he absence of procedures by the Defendant and the indifferent and careless way it resolves issues concerning discrepancies in interest rates lead to the reasonable conclusion that Defendant willfully violated the District of Columbia Debt Collection Law."  *Id.* at 4.

In support of her assertion that defendant lacked the appropriate procedures and training, plaintiff relies on the deposition testimony of one of defendant's employees, Jennifer Shilling, which plaintiff claims reveals a lack of the training and procedures needed to ensure the accuracy

13

of the collection letters. *See* Pl.'s Mem. at 2–4; Pl.'s Statement of Undisputed Material Facts [Dkt. # 91-1] ("Pl.'s SOF"). But in her statement of facts, as well as her opposition and her memorandum in support of her partial cross-motion, plaintiff fails to provide any specific references to Ms. Schilling's deposition, and she simply directs the Court to "JS Depo" without supplying any page or line citations. *See* Pl.'s SOF ¶¶ 1, 4–5, 27–30; *see also* Pl.'s Opp. at 7, 10; Pl.'s Mem. at 3, 5.[7] These references hardly qualify as citations "to *particular parts* of materials in the record" required by Rule 56 or Local Rule 7(h), Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *see also* LCvR 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts . . . which shall include references to the parts of the record relied on to support the statement."), and the Court is not obligated to conduct a fishing expedition into the record to find specific support for plaintiff's claims.[8] *See Celotex*, 477 U.S. at 324 (to defeat

---

[7]    The same sort of unhelpful and unspecific references to "D's Collection Notes" and "Magistrate April 24, 2015 Hearing Transcript" appear throughout plaintiff's statement of facts, her opposition, and her memorandum. Pl.'s SOF. ¶¶ 1, 6, 11, 26, 28, 31; Pl.'s Opp. at 6–7, 10; Pl.'s Mem. at 3, 5, 6.

[8]    Plaintiff belatedly attempts to bolster her allegations with citations to specific parts of the record in her cross-reply in support of her cross-motion, and she also advances entirely new arguments regarding other inaccuracies in defendant's communications. *See* Pl.'s Cross-Reply at 4–16. But "[a]s the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply." *Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (citations omitted); *see also McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (internal citations omitted). This is especially true where, as here, the defendant has not had the opportunity to respond to them. While defendant was permitted to file a cross-surreply, it was strictly limited to a specific issue regarding the admissibility of the errata sheet to plaintiff's deposition, and it did not afford defendant an opportunity to address plaintiff's newly-raised arguments and evidence. *See* Def.'s Surreply. Thus, the Court need not consider the arguments raised and the evidence cited for the first time in plaintiff's cross-reply brief in support of her motion for summary judgment on the question of defendant's willfulness. It can state, however, that its review of the deposition excerpts cited in the cross-reply did not uncover any support for plaintiff's assertion that defendant relies on its employees to insert amounts due into collection letters "on a whim." *See* Pl's Opp. at 3.

summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial") (internal quotation marks omitted); *see also, e.g.*, *Bank of N.Y. Mellon Trust Co., N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015) ("[T]he Court . . . does not scour the record for evidence that will support a party's claims.").

Moreover, the record evidence contradicts plaintiff's allegation that "Defendant flagrantly disregarded the DCDCL and [plaintiff's] rights thereunder by failing to maintain or implement *any* procedures relating to the DCDCL or specifically failing to maintain any procedures relating to the prevention of inaccuracies or communicating with consumers represented by counsel."  Pl.'s Cross-Reply at 4.  For example, defendant directs the Court to a copy of its policies and procedures, which was produced to plaintiff in response to her motion to compel, and includes a section entitled, "Demand Letter Review Procedure at Placement," which states:

> Prior to the issuance and mailing of any demand letter, a firm attorney must review the file to ensure that:
>
> - The claim is not barred by the applicable Statute of Limitations;
>
> - The claim amount matches the amount the creditor claims is owed;
>
> - If the claim seeks interest and/or attorney's fees, the request must be in accordance with client guidelines and state law; the interest rate and beginning accrual date must be accurate and the actual amount or % of attorney's fees correctly calculated;
>
> - The letter shall be addressed to the debtor only unless the Firm is informed the debtor is represented by counsel or a debt settlement company ("DSC");
>
> - The scrub was conducted and there is not a positive hit for deceased, military or bankruptcy.

Ex. 4 to Def.'s Opp. to Mot. to Compel [Dkt. # 73-3] ("Policies & Procedures") at 163; *see also id.* at 161 (defendant's "General Collection Procedure" stating that its collection efforts shall be undertaken "in accordance with all federal, state, and local laws, rules and regulations governing

collection practices").   In opposing plaintiff's cross-motion, defendant also points the Court to specific pages of Ms. Shilling's deposition, *see* Def.'s Reply at 5, which in which she testified that defendant's employees "are tested yearly on [their] skills and knowing the laws" relating to debt collection, including "the FDCPA and other laws applicable to collections."   Dep. of Jennifer Shilling (Dec. 12, 2014) [Dkt. # 90-3] 23:15–25.

There is no support in the record for a finding that defendant's misstatements were intentional, and accepting a known client's representation at face value as to the amount of plaintiff's debt owed, while it may have been negligent, does not rise to the level of reckless misconduct.   *See Safeco Ins. Co.*, 551 U.S. at 68 ("[T]he common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard:   action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"), quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *cf. Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015) (finding that consumer reporting agency's conduct in taking no steps other than contacting furnisher of credit information with an automated consumer dispute verification form regarding disputed entry in consumer's credit file "might have been negligent, but willfulness or recklessness is a higher standard that has not been met," as required for violation of FCRA's reinvestigation requirement).   Other than to claim in her cross-reply that defendant's procedures were not followed, *see* Pl.'s Cross-Reply at 6–8 – a claim which defendant did not have the opportunity to refute – plaintiff has failed to controvert defendant's explanation, based on the sworn testimony of Mr. Rubenstein, that any misstatements of the amounts of the debts owed were the result of inadvertence, and not the result of intentional or reckless behavior.

So, in light of the record evidence, the Court concludes that there is no genuine dispute on the question of whether any misstatements in the February 21 and August 22 letters were willful, which is the necessary predicate for a damage award under the D.C. Debt Collection Law.  *See* D.C. Code § 28-3814(j)(1).  Thus, defendant's motion for summary judgment will be granted with regard to plaintiff's claim under D.C. Code § 28-3814(f)(5).

II.     **The undisputed material facts show that defendant did not commit a willful violation of D.C. Code § 28-3814(g)(5) when it sent the August 22 letter to plaintiff, despite knowing that plaintiff was represented by counsel.**

For many of the same reasons, the Court will also grant defendant's motion with regard to plaintiff's remaining Debt Collection Law claim.  Section 28-3814(g)(5) provides that a debt collector cannot engage in "any communication with a consumer wherever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known."  D.C. Code § 28-3814(g)(5).  Plaintiff contends that defendant violated this provision by "attempt[ing] to collect an alleged debt by communicating with Plaintiff after Defendant[] [was] notified that Plaintiff was represented by counsel."  Compl. ¶ 32(e).

The inside address of the August 22 letter was properly changed in part to substitute "Radi Dennis Consumer Justice ESQ" as the addressee instead of the plaintiff, *see* Ex. A to Compl., but defendant concedes that the letter was still incorrectly directed to plaintiff's home address, and that it included the salutation "Dear Ms. Baylor," even though defendant had been notified that the debtor had retained counsel.  Def.'s Mem. at 2, 6.  But defendant insists that this too was the result of an inadvertent oversight "caused by a computer error in failing to update the file to include the address of [plaintiff's] counsel in the proper field of the initial demand letter."  *Id.* at 6.  Defendant maintains that this "was neither a knowing nor reckless violation of the requirement that

communications be directed to a consumer's attorney," *id.*, and it relies upon Mr. Rubenstein's declaration:

> Despite the fact that [plaintiff's counsel's] name was listed on the file for the second group of loans, the address listed on the August 2[2], 2013 letter mistakenly was to Plaintiff's home address.  I reviewed the circumstances under which Plaintiff's home address appeared on this letter and, based on my review of the Law Firm's records, it appears that the mistake in listing the Plaintiff's home address was caused by a computer error that failed to update the address on the letter to reflect [plaintiff's counsel's] mailing address.

Rubenstein Decl. ¶ 24.

Since plaintiff did not attempt to rebut this statement or come forward with any evidence to contradict it,[9] the Court finds that the undisputed Rubenstein declaration supports the conclusion that defendant did not act knowingly, intentionally, or recklessly in addressing the letter – in part – to plaintiff.

As with her other claims, plaintiff contends that summary judgment in her favor is warranted because defendant lacked policies and procedures to prevent the letter from being sent to plaintiff directly.  Pl.'s Mem. at 4–6.  She argues that this suffices to show that defendant acted willfully in violation of the statute.  *Id.*  But once again, the record evidence plainly contradicts plaintiff's claims regarding the existence of policies and procedures regarding communications

---

9      Plaintiff insists that defendant should be precluded from claiming that the address was a mistake because it argued in its motion to dismiss that it was permitted by law to contact plaintiff directly because the August 22 letter appeared to deal with a second debt, and not the one for which plaintiff's counsel had informed defendant she represented plaintiff. Pl.'s Opp. at 6; *see also* Def.'s Br. in Supp. of Mot. to Dismiss [Dkt. # 7-1] at 11, 14.  But plaintiff offers no legal support for the proposition that defendant cannot advance an alternative explanation for its conduct at this stage of the litigation.  Defendant's position at the motion to dismiss stage was a legal one, based solely on the face of the complaint and the records plaintiff chose to attach as exhibits, but summary judgment can be predicated on the entire record.

with consumers known to be represented by counsel.  For example, defendant's "Communication Policy" provides:

> In order to insure compliance with the TCPA and FDCPA regulations, it is the policy of this Firm that all communications by any employee in connection with an attempt to collect a debt must adhere to the provisions in this Policy.  Communication includes written, verbal, online, email or other techniques to communicate with a consumer. . . .
>
> ***At a minimum Staff:***
> - Must not contact or respond to a consumer via email despite the consumer's consent unless approved by Management.
> - Must not contact or respond to a consumer if the consumer is represented by counsel.

Policies & Procedures at 163.  And defendant's "Adversary Attorney Procedure" explains:

> If an attorney enters his/her appearance in a case at any time or represents to [defendant's] personnel that the consumer is represented by counsel, the employee, upon receipt of the notice, shall populate the adversary field in the CLS consumer screen and remove all consumer contact diaries and generate "Xatty" code. . . .
>
> Unless or until such time counsel strikes his appearance, all communication, written or verbal, shall be directed to counsel only.

*Id.* at 163–64.  That policy also notes that "[a] pop up message will also appear in the CLS file if a user attempts to access the [client's] file," and that message will alert the user that the client is represented by counsel.  *Id.*

Based on these policies and procedures and the declaration provided by Mr. Rubenstein, the Court finds that there is no genuine dispute of material fact regarding the willfulness of defendant's action in sending the collection letter – which was addressed to counsel at plaintiff's address – and that defendant is entitled to judgment as matter of law on plaintiff's claim under D.C. Code § 28-3814(g)(5).

**III.   It is unlikely that plaintiff has proffered evidence sufficient to show that she has suffered actual "damages proximately caused" by defendant's alleged misconduct.**

Defendant has also moved for summary judgment on the grounds that plaintiff has not shown that she suffered actual damages from the alleged violations of the Debt Collection Law. Def.'s Mem. at 6–8. Because the Court has found that defendant is entitled to judgment as a matter of law on the issue of willfulness, it need not resolve this issue. But it doubts that plaintiff has put forth sufficient evidence to permit a jury to find that she suffered compensable damages as a proximate result of defendant's conduct. *See* D.C. Code § 28-3814(j)(1).

Plaintiff identified her specific economic damages as paying "to send a fax" to defendant and "paying for the certified mailing" she sent to defendant. Pl.'s Cross-Reply at 18. But her expenditures on postage and faxing are better characterized as costs, and judgment has already been entered in her favor on her FDCPA claim "in the amount of $1,001.00 plus costs and expenses together with reasonable attorney fees for all claims under the Fair Debt Collection Practices Act." J. on Offer & Acceptance. Because plaintiff's FDCPA claim was based on the same alleged misconduct as her Debt Collection Law claim, *compare* Compl. ¶ 29 (FDCPA claim) *with id.* ¶ 32 (Debt Collection Law Claim); *see also id.* ¶¶ 17–26 ("Facts Common to All Counts"), and she has already been provided with a means to recover her costs in responding to defendant's collection letters, she cannot recover those same costs twice, whether as taxable costs or damages. *See, e.g.*, *Jean-Baptiste v. District of Columbia*, 931 F. Supp. 2d 1, 15 (D.D.C. 2013) ("[E]ven where a party brings claims based on different theories, both state and federal, a party 'cannot recover the same damages twice.'"), quoting *Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011).

To the extent that plaintiff persists in her claim that she suffered damages because she "had to take time off work to address this matter," Compl. ¶ 27, she has not offered any evidence to support that claim, and so it cannot survive summary judgment, let alone create a triable issue of

fact for a jury.  *See, e.g.*, *Barrett v. Chreky*, 634 F. Supp. 2d 33, 39 (D.D.C. 2009) (granting summary judgment where the plaintiff "failed to provide th[e] Court with any reasonable basis upon which a jury could determine damages" on the claim that the defendant unlawfully withheld tips from the plaintiff).

As for her noneconomic damages, plaintiff relies on an affidavit that improperly expands on her sworn deposition testimony regarding the extent of her emotional damages.  *Compare* Baylor Dep. 12:22–13:1; 72:8–75:6 *with* Aff. of Demetra Baylor in Supp. of Pl.'s Opp. [Dkt. # 90-1] ("Baylor Aff.") ¶¶ 2, 5, 7–8, 10–16; *see also Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) ("[The] sham affidavit rule . . . precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony."), quoting *Pyramid Sec. Ltd. V. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991).

Assuming that this affidavit is even admissible, plaintiff's statements that she felt upset, frightened, nervous, embarrassed, humiliated, overwhelmed, and lethargic from dealing with defendant's letters, Baylor Aff. ¶¶ 2, 5, 7–8, 10–16, and her father's testimony that she was mentally and physically distressed, afraid, panicked, and confused, Aff. of Ernest Baylor, Jr. in Supp. of Pl.'s Opp. [Dkt. # 90-2] ¶¶ 3, 6–7, may show that plaintiff suffered some emotional distress after she was contacted by defendant, but as evidence in support of quantifiable monetary *damages*, it is quite thin.  *See e.g.*, Baylor Dep. 59:15–18 ("Question:  Now, paragraph 27 says that you endured anxiety.  Can you explain what that means?  Answer:  I was afraid and scared and felt a lot of pressure."); *id.* 72:18–20 ("I had trouble focusing at work and I had to go to the rest room to compose myself and that was an effort.").  Furthermore, plaintiff did not produce evidence that she sought medical or mental health care, and she could not identify when it was that

21

she missed work or was unable to sleep.  *See, e.g.*, *id.* 54:21–55:2 ("Question: . . . When did you take time off work?  Answer:  I don't recall exactly when.").

"It is the plaintiff's burden to prove injury caused by the defendant's unlawful conduct and, even though damages for emotional distress need not be quantified, there must be a basis from which the jury can make a common-sense assessment."  *Ivey v. District of Columbia*, 46 A.3d 1101, 1109 (D.C. 2012).  Plaintiff has offered very little to satisfy that burden here.

And in any event, it is not clear to the Court that plaintiff's alleged emotional harm constitutes "damages proximately caused" by the deficiencies in defendant's communications.  *See* D.C. Code § 28-3814(j)(1).  Rather, plaintiff's own statements indicate that it was the existence of the debts themselves, combined with the fact that a law firm had gotten involved, that was causing plaintiff to suffer emotional distress, and not the variation in the amounts owed in the letters or defendant's direct contact with plaintiff after she was represented by counsel.  *See* Baylor Dep. 63:12–16 ("Question:  And what was causing you to worry?  Answer:  Receiving a letter from a company that I wasn't familiar with saying that I owed a certain amount of money was confusing and intimidating and scared receiving it from a law firm.").  Thus, while the Court need not resolve the damages issue in light of its finding that defendant is entitled to summary judgment on the question of willfulness, it questions whether plaintiff's evidence in support of her claim for emotional damages would provide a sufficient basis for a jury to award her damages in any event.

## CONCLUSION

Because the Court finds that there is no genuine dispute of material fact with respect to the question of whether plaintiff has adduced substantial evidence that defendant's alleged misconduct

was willful, it will deny plaintiff's partial motion for summary judgment and grant defendant's

motion for summary judgment in its entirety.

    A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 31, 2016