# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEMETRA BAYLOR, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-1995 (ABJ) |
| MITCHELL RUBENSTEIN & ASSOCIATES, P.C., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the Court on remand from the U.S. Court of Appeals for the D.C. Circuit. In accordance with the Circuit's opinion of May 30, 2017, the Court must now determine the appropriate amount of attorney's fees to be awarded to plaintiff in this case.

## BACKGROUND

On December 17, 2013, plaintiff Demetra Baylor brought this case against defendant Mitchell Rubenstein & Associates, P.C., alleging that defendant violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the D.C. Debt Collection Law, D.C. Code § 28-3814 *et seq.*, and the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3901 *et seq.* Compl. [Dkt. # 1] ¶¶ 28–48. On February 7, 2014, while defendant's motion to dismiss was pending, plaintiff accepted defendant's Rule 68 offer of judgment on the federal claim "in the amount of $1,001.00, plus costs and expenses together with reasonable attorney fees for all claims under the Fair Debt Collection Practices Act." Pl.'s Notice of Acceptance of Def.'s Rule 68 Offer of J. [Dkt. # 11]; *see also* J. on Offer & Acceptance [Dkt. # 14].

In response to defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, a number of the D.C. claims were dismissed. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43, 55 (D.D.C. 2014). Plaintiff's claims under sections 28-3814(f)(5) and 28-3814(g)(5) of the D.C. Debt Collection Law survived, though, and the parties engaged in discovery.

In August 2015, defendant moved for summary judgment on those two claims, and plaintiff cross-moved for partial summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 84]; Pl.'s Partial Mot. for Summ. J. [Dkt. # 91]. The Court granted summary judgment in favor of defendant after finding that there was no genuine dispute of material fact as to whether defendant acted willfully in connection with any inaccurate communications covered by the Debt Collection Law. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 174 F. Supp. 3d 146, 149 (D.D.C. 2016). This judgment was upheld on appeal. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 951 (D.C. Cir. 2017).

In other words, plaintiff has succeeded on one claim in her three-count complaint. On March 12, 2014, after the resolution of the federal claim, plaintiff filed a motion for attorney's fees under the fee-shifting provision of the FDCPA for her counsel's work on that claim. Pl.'s Mot. for Award of Att'y's Fees & Costs [Dkt. # 15] ("Pl.'s 1st Fee Mot."); Pl.'s Mem. in Supp. of Mot. for Award of Att'y's Fees & Costs [Dkt. # 15-1] ("Pl.'s 1st Fee Mem."). The motion originally sought $155,700.00 in attorney's fees and $442.95 in costs for 346 hours of work. Pl.'s 1st Fee Mot. at 2. Plaintiff amended her request for fees multiple times thereafter, arriving ultimately at a request for $220,712.00 in attorney's fees and $442.95 in costs.

The Court referred the matter to a Magistrate Judge for preparation of a Report and Recommendation under Local Civil Rule 72.2. Order Referring Mot. for Att'y's Fees [Dkt. # 18];

*see* LCvR 72.2 ("At the request of the district judge to whom the case is assigned, a magistrate judge may hear and determine any pretrial motion or matter . . . ."); Fed. R. Civ. P. 72(a) (permitting referral of nondispositive matters to a magistrate judge and providing for modification where report is "clearly erroneous or is contrary to law"). After reviewing the matter, the Magistrate Judge recommended that the award be reduced to a total of $41,989.80 because the requested fees were significantly higher than reasonable. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, No. 13-01995, 2014 WL 7014280, at *6 (D.D.C. Oct. 24, 2014). The Magistrate Judge also recommended awarding plaintiff all requested costs and postjudgment interest. *Id.*

Both parties objected to the Magistrate Judge's Report and Recommendation. Def.'s Objs. to R. & R. [Dkt. # 46] ("Def.'s Objs."); Pl.'s Objs. to R. & R. [Dkt. # 47] ("Pl.'s Objs."). The Court, applying the "clearly erroneous standard" set out in Local Rule 72.2, observed that the award was "quite generous," but it upheld the award under that standard. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 77 F. Supp. 3d 113, 121 (D.D.C. 2015); *see also* LCvR 72.2(c) ("[A] district judge may modify or set aside any portion of a magistrate judge's order . . . found to be clearly erroneous or contrary to law."). Both sides appealed the Court's decision – plaintiff's counsel claimed the award was too low, and defendant claimed it was too high.

On appeal, the D.C. Circuit determined that since Federal Rule of Civil Procedure 54(d)(2)(D) provides that a Court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter," a ruling on a motion for attorney's fees must be evaluated under Rule 72(b)'s standard, "which requires that a district judge 'determine de novo any part of the magistrate judge's disposition that has been properly objected to.'" *Baylor*, 857 F.3d at 945, quoting Fed. R. Civ. P. 72(b)(3). The matter was then remanded to this Court to undertake a *de novo* review of the request for attorney's fees.

3

Upon a thorough reconsideration of the original motion for attorney's fees and supporting materials, the amendments to the original motion, all of the oppositions and replies on the docket, the materials submitted to the Court by both parties challenging the Magistrate Judge's decision, and the entire record in this case, the Court has determined in an exercise of its discretion that defendant must pay attorney's fees in the amount of $17,000.00, plus postjudgment interest, and no more.

**STANDARD OF REVIEW**

The Fair Debt Collection Practices Act provides, in pertinent part, that "in the case of any successful action [by a person] to enforce [a debt collector's liability under the Act]," the debt collector "is liable to such person . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a). Ordinarily, courts utilize the "lodestar" method for calculating an initial estimate of fees, which requires multiplying "the number of hours reasonably expended on the litigation [] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).[1]

The party seeking fees has the burden of establishing the reasonableness of any fee request. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The party must establish a reasonable hourly rate by providing information regarding the attorney's billing practices, the attorney's skill, experience, and reputation, as well as the prevailing market rates in the relevant community. *Id.* And the party must demonstrate that the hours expended on the litigation were

---

1 While *Hensley* involved a different fee-shifting statute, 42 U.S.C. § 1988, this Circuit applies that case's rule to "all federal statutes limiting fee awards to 'prevailing part[ies].'" *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992), quoting *Hensley*, 461 U.S. at 433 n.7.

reasonable by showing that the time was productive and not duplicative. *See Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993).

In making the initial fee calculation, the court "should exclude . . . hours that were not 'reasonably expended,'" such as for work that is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Further, the court may consider a variety of factors to determine if the overall fee award should be adjusted "upward or downward, including the important factor of the 'results obtained.'" *Id.*[2] "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce an award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436–37.

## ANALYSIS

For years, as this Court has noted previously, attorney's fees have been the tail wagging the dog in this case. Counsel filed a complaint and secured for her client the $1001.00 statutory damages on plaintiff's federal claim, but she was completely unsuccessful with respect to all of the other claims. The majority of plaintiff's state law claims were dismissed, and only her claims

---

2   *Hensley* provides a list of twelve factors that a court may consider when determining the reasonableness of a fee request:

> The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 & n.3 (citation omitted).

under sections 28-3814(f)(5) and 28-3814(g)(5) of the D.C. Debt Collection Law survived defendant's motion to dismiss. *See Baylor*, 55 F. Supp. 3d at 55. Discovery, which should have been relatively circumscribed given the limited nature of the remaining allegations, was wide ranging and marked by extraordinary contentiousness, all of which does little to alleviate the impression that the litigation was largely driven by fees.

There is no doubt that counsel invested time and effort at the outset to vindicate the rights of her client, and that therefore, under the statute, she is entitled to some compensation for the work she performed to draft the complaint and some of the effort to either settle or litigate the matter thereafter. But the Court agrees completely with the concurring opinion filed by the Circuit Judge in this case that the fee request was not reasonable. *See Baylor*, 857 F.3d at 955 (Henderson, J., concurring). It is clear from this Court's January 2015 decision adopting the Magistrate Judge's recommendation that while the Court was aware of the scope of a judge's discretion when awarding fees, it felt constrained by its understanding at the time that it was required to apply a clearly erroneous standard and reduce the award only if it was contrary to law. *See Baylor*, 77 F. Supp. 3d at 118–19. But those constraints no longer apply.

Looking at the matter *de novo*, though, the Court finds that the fee request was excessive in light of the limited work that was necessary to achieve plaintiff's minimal success in this case. Therefore, the fees will be reduced substantially. Moreover, the Court does not find it to be a reasonable exercise of its discretion to require the defense to pay for the time counsel chose to invest in pursuing the excessive fees, and therefore, while it has the authority to do so, it will not award any fees for the extensive amount of time spent litigating the fee issue.

I. **The Fee Requests**

Plaintiff originally moved for an award of attorney's fees in the amount of $155,700.00.

Pl.'s 1st Fee Mot. at 2. As of the time of filing that motion, plaintiff's counsel represented that she had expended 346 hours of work on plaintiff's behalf through the acceptance of defendant's offer of judgment at the "prevailing market rate" of $450.00 per hour. Pl.'s 1st Fee Mot. at 2; Pl.'s 1st Fee Mem. at 12; *see* Decl. of Radi Dennis in Supp. of Pl.'s 1st Fee Mot. [Dkt. # 15-1] ("Dennis Decl.") ¶¶ 10, 12–13; Ex. C to Dennis Decl. [Dkt. # 15-1] ("Time Records"). Specifically, the 346 hours of work reflected the "considerable time and effort" counsel spent on three settlement attempts prior to the filing of the complaint, drafting a twenty-seven page opposition to defendant's motion to dismiss, and negotiating the Rule 68 offer and achieving its acceptance by her client. *See* Pl.'s 1st Fee Mem. at 3–5.[3]

After defendant opposed the motion for attorney's fees, *see* Def.'s 1st Fee Opp., plaintiff subsequently requested additional fees for drafting and filing her reply to defendant's opposition, bringing her fee request to $195,332.00 for a total of 434.07 hours of work expended on pre-litigation settlement discussions, the complaint, the opposition to defendant's motion to dismiss, the Rule 68 offer and acceptance, and the fee petition and reply. Pl.'s 1st Fee Reply at 1; Suppl. Decl. of Radi Dennis in Supp. of Pl.'s 1st Fee Mot., Ex. D to Pl.'s 1st Fee Reply [Dkt. # 21-1]

---

3      Defendant maintains that it served plaintiff's counsel with the Rule 68 offer on January 7, 2014, *see* Def.'s Opp. to Pl.'s 1st Fee Mot. [Dkt. # 20] ("Def.'s 1st Fee Opp.") at 4; Ex. 2 to Def.'s 1st Fee Opp. [Dkt. # 20-4], but that plaintiff's counsel did not retrieve the letter at her listed business address until January 29, 2014. *See* Def.'s 1st Fee Opp. at 4; Ex. 3 to Def.'s 1st Fee Opp. [Dkt. # 20-5]. In response, plaintiff's counsel contends that defendant's Rule 68 offer did not arrive at her business address until January, 17, 2014, and "[t]he information as to when the letter arrived . . . is easily ascertainable from www.usps.com." Pl.'s Reply Mem. to Def.'s 1st Fee Opp. [Dkt. # 21] ("Pl.'s 1st Fee Reply") at 12 & n.10. Plaintiff provided the Court with the USPS tracking information, which does reflect that the letter was "available for pickup" on January 17, 2014, but was not "delivered" until January 29, 2017. *See* Ex. A. to Pl.'s 1st Fee Reply [Dkt. # 21-1].

("Dennis Suppl. Decl.") ¶ 6(f); Ex. E to Dennis Suppl. Decl. [Dkt. # 21-1] ("Suppl. Time Records").[4]

Later on, after the Court denied defendant's motion for relief from judgment, plaintiff submitted an amendment to her original fee request – in response to the Court's order to do so – seeking an additional $19,440.00 for 43.2 hours expended in responding to defendant's motion. Amendment to Pl.'s 1st Fee Mot. [Dkt. # 42] ("Pl.'s 2nd Fee Mot."); Second Suppl. Decl. of Radi Dennis in Supp. of Pl.'s 1st Fee Mot., Ex. A to Pl.'s 2nd Fee Mot. [Dkt. # 42-1] ("Second Dennis Suppl. Decl.") ¶ 2; Ex. B to Pl.'s 2nd Fee Mot. [Dkt. # 42-1] ("Itemization of Fees"). Defendant opposed the amendment to plaintiff's fee request, Def.'s Resp. to Pl.'s 2nd Fee Mot. [Dkt. # 43] ("Def.'s 2nd Fee Opp."), and plaintiff filed a reply, requesting an additional $5,940.00 for the 13.2 hours spent drafting that document. Pl.'s Reply to Def.'s 2nd Fee Opp. [Dkt. # 44] at 6; Third Suppl. Decl. of Radi Dennis in Supp. of Pl.'s 1st Fee Mot. [Dkt. # 44-1] ("Third Dennis Suppl. Decl.") ¶ 2.[5]

In total, plaintiff has requested $220,712.00 in attorney's fees and $442.95 in costs.

---

[4] Plaintiff revised her initial 346 hour request downward to 345.75 hours, but added an additional 110.4 hours for drafting the reply to defendant's opposition, to which plaintiff applied a twenty percent "discount," for a total of 88.32 hours spent on the reply. Pl.'s 1st Fee Reply at 1 n.1; Dennis Suppl. Decl. ¶ 6(f); Suppl. Time Records. "The total number of hours after the discount is 434.07." Dennis Suppl. Decl. ¶ 6(f). The Court also notes that throughout plaintiff's pleadings, plaintiff's counsel often refers to her billable time in terms of billable hours, but her time sheets reflect that she kept her time by minute. *Compare* Time Records and Itemization of Fees (quantifying her time as hours:minutes, where the minutes column never exceeds the number 60) *with* Dennis Suppl. Decl. ¶ 6(f) (averring that "the total billing hours number of hours total 345.75 rather than the 346 originally claimed"). While it appears that in light of that confusion, the Magistrate Judge may have read the time entries as if they were set forth in hours, the Court has based its calculations on the hours:minutes format.

[5] Plaintiff does not appear to provide supplemental time records in support of her counsel's representation that she spent an additional 13.2 hours drafting the reply brief.

## II. The Hourly Rate

Defendant asks the Court to reduce the hourly rate to be applied in the calculation from the $450.00 per hour requested to $175.00 per hour. Def.'s Objs. at 9–11. The Court previously ruled that defendant had waived the right to question the hourly rate since it did not raise the issue before the Magistrate Judge. *See Baylor*, 77 F. Supp. 3d at 119. However, since defendant raised the issue in its objection to the Magistrate Judge's report, and the Magistrate Judge's ruling is to be considered *de novo*, the Court finds that it can now look at this issue. And it agrees that plaintiff's counsel's hourly rate must be reduced to an extent.

Plaintiff's counsel requests an hourly rate of $450.00 based on the *Laffey* Matrix for an attorney with fourteen years of experience. *See* Dennis Decl. ¶ 12. Regardless of whether plaintiff's counsel has the requisite level of experience that would justify that rate under the *Laffey* Matrix, the Court finds this rate to be inappropriate given counsel's agreement to represent her client at a rate of $325.00 per hour. *Id.* ¶ 14 ("The rate quoted in [p]laintiff's contingency agreement and signed almost a year ago in 2013 is $325 per hour."). Although defendant urges the Court to reduce plaintiff's counsel's rate even further, the Court is satisfied that $325.00 per hour is appropriate since "an attorney's usual billing rate is presumptively the reasonable rate," *Kattan ex rel. Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), and plaintiff's counsel provided the Court with sufficient detail regarding her legal experience in her declaration to support this conclusion. *See* Dennis Decl. ¶¶ 3–7.

## III. Hours Reasonably Expended

The Court finds that large portions of the time plaintiff's counsel spent on this case were unnecessary or excessive, warranting a substantial reduction.

In her declaration, plaintiff's counsel avers that she "spent more than 346 hours litigating the FDCPA claim in this case through the Acceptance of Defendant's Offer of Judgment on February 7, 2014 and time incurred thereafter relating to the filing" of the attorney's fee motion. Dennis Decl. ¶ 10. She spent time "researching and drafting multiple letters of settlement, . . . drafting and filing a 17-page fact intensive complaint, . . . drafting a 27-page Opposition to Defendant's Motion to Dismiss, [and] researching and responding to Defendant's Rule 68 Offer of Judgment that did not include all the claims alleged in the complaint." *Id.* Further, counsel claims to have spent over 110 hours writing a reply to defendant's opposition to the fee motion. *See* Dennis Suppl. Decl. ¶ 6(f). Thus, her fee request is based on an expenditure of more than 400 hours, which would be the same as spending more than ten forty-hour weeks, working eight hours each day on this case and nothing else. This cannot be justified.

The Court sees a number of problems with awarding plaintiff fees for all of the 434.07 hours supposedly spent on these tasks. First, while counsel's efforts to obtain a settlement prior to the filing of a lawsuit were commendable, these activities occurred prior to the commencement of this lawsuit, and they are therefore outside of the scope of the statutory provision authorizing an award of attorney's fees to a prevailing party.

Further, counsel states that she spent approximately 56 hours drafting, editing, and serving the complaint, as well as researching legal issues relevant to the claims in the complaint. *See* Time Records. However, counsel does not distinguish between time she devoted to the federal claim, and time she spent on the District of Columbia claims, except for identifying approximately 5 hours of FDCPA research related to the complaint. *See, e.g.*, Time Records at 1–2 (claiming a total of 26.1 hours for drafting the complaint, and a total of 13.1 hours for editing the complaint,

with no distinction between the federal and state claims);[6] *id.* (specifying a total of 5.2 hours for "FDCPA section research re [c]omplaint," "Legal Research concerning FDCPA," and "FDCPA research defenses"). The complaint is fifteen pages long, and it includes eight pages of factual allegations common to all counts, four pages relevant to plaintiff's D.C. claims, and three pages dedicated exclusively to the federal claim. *See generally* Compl. Since plaintiff succeeded on only one of the three counts in the complaint, the Court could fairly recognize only a third of the hours devoted to the complaint. But, given the overlapping facts, the Court will award fees for 40% of the time spent on the complaint, or 22.4 hours.

Counsel also seeks compensation for the 87 hours she spent drafting the opposition to defendant's motion to dismiss, even though an offer of judgment on the federal claim had already been transmitted. Pl.'s 1st Fee. Mem. at 5; *see* Time Records at 1–2. While it may be true that plaintiff's counsel did not pick up the offer of judgment from her mailbox until January 29, 2014, two days after she filed the opposition, the offer was delivered to the only address counsel provided on this Court's docket, *see* Compl.; Civil Cover Sheet [Dkt. # 2], on January 17, 2014, well before the opposition was due. *See* Ex. A to Pl.'s 1st Fee Reply [Dkt. # 21–1]. The Court cannot deny that plaintiff's counsel performed the work related to opposing the motion to dismiss; but it also cannot ignore the fact that all of counsel's work with regard to the FDCPA claim, set forth on pages 6–17 of the opposition, *see* Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 8-1] at 6–17, was unnecessary. *See* Pl.'s 1st Fee Mem. at 5 ("Plaintiff spent 87 hours disproving the numerous claims and defenses averred by Defendant[] in spite of the fact that Defendant[] had already offered to

---

6     The Magistrate Judge also made this distinction, but reached different billable hours figures. It appears that the Magistrate Judge added up counsel's time on a billable hour scale, without converting the time from minutes to hours first. *See Baylor*, 2014 WL 7014280, at *4 (concluding that counsel spent 24.87 hours drafting the complaint, and 11.46 hours editing the complaint).

accept judgment on said claims."). Moreover, the remainder of plaintiff's counsel's time spent on the opposition, *see* Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 8-1] at 17–28, was devoted to the unsuccessful state law claims for which counsel is not entitled to attorney's fees. Therefore, the Court concludes that no fees should be awarded for the hours counsel spent opposing the motion to dismiss. Even if the Court were inclined to recognize the time spent on the federal claim, applying the same percentage used on the complaint would reduce the hours reasonably expended to 34.8 hours.

Turning to the hours spent opposing defendant's five-page motion for relief from judgment, the Court finds that a percentage reduction in the hours claimed is necessary here as well. For her filing of the twelve-page opposition, plaintiff's counsel seeks to be compensated for an additional 43.2 hours. *See* Pl.'s 2nd Fee Mot. However, a review of the filings in this portion of the case indicates that plaintiff wasted time and effort engaging in the sort of antagonism for which she had already been chastised. *See, e.g.*, Pl.'s Opp. to Mot. Relief from J. [Dkt. # 37] at 4 ("Defendant's conduct appears to be based in a reality that is unclear from the record."); *id.* ("Defendant's scorched earth litigation strategy . . . ."). Moreover, the amount of time spent on this one motion seems unreasonable given the limited nature of the issue presented and the total amount of time invested in the case as a whole. Therefore, the Court concludes that the time spent on the opposition to defendant's motion for relief from judgment should be reduced by 75%, and counsel will be compensated for 10.8 hours of work.

Finally, plaintiff seeks to recover for the 85 hours counsel spent drafting the fee petition, 110 hours spent (over 13 days) drafting a reply to the opposition to the motion, and 13.2 hours expended drafting a reply to defendant's opposition to counsel's fee amendment. These hours far exceed the time spent in dealing with the federal claim on the merits. The Supreme Court has

12

made it clear that the initial fee calculation should exclude any "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 433. Applying that standard, the Court cannot require defendant to fund plaintiff's inefficient pursuit of an unacceptably large fee for an extremely modest gain for her client.

Therefore, the Court will award fees only for the reasonable time counsel spent on the complaint (22.4 hours), the Rule 68 offer and settlement (40.7 hours), *see* Time Records at 2–3, and the opposition to the motion for relief from judgment (10.8 hours), which adds up to 73.9 hours. The total would increase to 108.7 hours if some portion of the time spent on the opposition to the motion to dismiss (34.8 hours) were included. The Court finds that these totals accurately reflect the reasonable number of hours it would take to perform the work that was necessary in this case.

## IV. Application of the Lodestar Method

Applying the lodestar approach to these calculations, plaintiff's counsel would be awarded $24,017.50 for 73.9 hours of work at $325.00 an hour, or $35,327.50 for 108.7 hours at the same rate if one includes a portion of the opposition to the motion to dismiss. But that does not end the analysis; the Court has the discretion to assess the award in the context of the entire case, including the reasonableness of the fee petition itself.

Counsel's original request sought an award *220 times larger* than the $1,001.00 she obtained for plaintiff; even after a reduction of hours to account only for those reasonably expended and the lowering of counsel's hourly rate, counsel would still receive a fee that is 24 or 35 times larger than the result obtained for plaintiff if the Court applies the lodestar method. Given "that the district court has discretion in determining the amount of a fee award," *Hensley*, 461 U.S. at 437, and that the Court has the authority to award a "fee below what a 'reasonable' fee would

have been in order to discourage fee petitioners from submitting an excessive request," *Reilly*, 1 F.3d at 1258, the Court finds that counsel's fee must be reduced beyond either lodestar calculation. Such a reduction is necessary in order to balance the equities between the awards to plaintiff and her counsel, as well as to sanction counsel and deter her from submitting unreasonable fee requests in the future. *See Baylor,* 857 F.3d at 958 (Henderson, J., concurring).[7]

The lodestar method, while usually the proper approach to determine fees, is not mandatory in the FDCPA context where circumstances justify a departure. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (observing that the FDCPA "does not mandate a fee award in the lodestar amount"). Although the D.C. Circuit has not squarely addressed the issue, the Court finds the Fourth Circuit's analysis persuasive on this point:

> [Section] 1692k does not mandate a fee award in the lodestar amount. If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances. *Hensley* itself recognized that, in certain circumstances, an award in the lodestar amount may be excessive. When "a plaintiff has achieved only partial or limited success," the district court, in calculating an appropriate fee award, "may simply reduce the award to account for the limited success."

*Id.*, quoting *Hensley*, 461 U.S. at 436–37; *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 598 & n.16 (2010) (noting that "courts have discretion in calculating reasonable attorney's fees" under the FDCPA, and that while "[m]any District Courts apply a lodestar method," those courts "permit[] downward adjustments in appropriate circumstances"); *Baylor*, 857 F.3d at 958 (Henderson, J., concurring) (citing *Carroll* approvingly for the proposition that the FDCPA permits outright denial of attorney's fees in certain circumstances); *see also*

---

7   The Court observes that plaintiff's counsel has been in this situation before. *See Jones v. Dufek*, 830 F.3d 523, 529 & n.6 (D.C. Cir. 2016) (affirming denial of fee request for $29,241.00 for sixty-five hours of work on discovery issue after district court found the award "excessive and therefore 'unjust'").

14

*Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (observing that in civil rights litigation, after "[h]aving considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness or multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate"), quoting *Hensley*, 461 U.S. at 430, 433 & n.3.

Moreover, it is also important to point out that the total number of hours spent litigating this case was inflated by the unnecessary contentiousness of the litigation in spite of explicit Court orders to refrain from such conduct. *See* Min. Order (Feb. 11, 2014) ("[T]he Court need not exercise its jurisdiction to permit parties to file pleadings that are unnecessarily enlarged with sharp attacks on counsel such as 'defendant disingenuously asserts,' or 'defendant absurdly argues,' or 'it is hard to believe that defendants would stoop to such a blatant mischaracterization.'"); Order [Dkt. # 41] at 2 ("There would be little justification for the these sorts of excessive, repetitive, and unnecessarily sharp pleadings in any case, but in this case in particular . . . there has been a particularly striking expenditure of effort and resources on both sides that has tried the Court's patience and wasted the Court's time."). Although defendant contributed to the duplicative and unnecessary filings in this case, the Court cannot disregard the sloppiness of plaintiff's counsel's filings, including the filing of numerous erratas, as well as counsel's inability to refrain from attacking defendant. Such conduct does not deserve to be rewarded. *See, e.g., Laborers' Int'l Union of N. Am. v. Brand Energy Servs. LLC,* 746 F. Supp. 2d 121, 126 (D.D.C. 2010) ("If a court determines that . . . waste of effort has occurred, it has the discretion to simply reduce the proposed fee by a reasonable amount without an item-by-item accounting."), citing *LaPrade v. Kidder Peabody & Co.,* 146 F.3d 899, 906 (D.C. Cir. 1998).

While defendant urged the Court to deny plaintiff's request for fees entirely because the original request "shocks the conscience," Def.'s Objs. at 4–7; *see also* Decl. of Melvin Hirshman [Dkt. # 20-2] ¶ 16 (opining that counsel's time spent on the complaint and her initial fee petition could not "be justified" and was "unreasonable and excessive"), the Court finds the lesser sanction of a large fee reduction to be sufficient in this case where plaintiff's counsel did do some work and did achieve a positive result for plaintiff. *See Reilly*, 1 F.3d at 1258 (recognizing the court's ability to deny the fee request in its entirety, but concluding that "disallowing all fees would unduly penalize" the attorney). However, this was clearly a case where plaintiff achieved only limited or partial success. The Court cannot ignore the fact that plaintiff only received a grand total of $1,001.00 for her success on her single federal claim. And the D.C. Circuit has made it clear that "courts should proportion fees to the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 599 (D.C. Cir. 1996), quoting *Hensley*, 461 U.S. at 435.

Therefore, in an exercise of the Court's discretion, the Court will order defendant to pay attorney's fees in the amount of $17,000.00.

## V. Costs

Defendant also objected to the Magistrate Judge's recommendation that plaintiff be awarded $442.95 in costs, and it argued that costs have already been paid to plaintiff along with the judgment of $1,001.00 in plaintiff's favor. Def.'s Objs. at 12, citing R. & R. at 11. Upon review of the record, it appears that defendant has indeed presented plaintiff with a check for $1,443.95, *see* Ex. 4 to Def.'s Mot. for Relief from J. [Dkt. # 34-5], and that plaintiff admitted that the check was deposited into plaintiff's counsel's client trust account. Pl.'s Opp. to Def.'s Mot.

16

for Relief from J. [Dkt. # 37] at 1 n.1. Therefore, the Court concludes that costs have already been awarded to plaintiff and there is no basis for a further request.

## VI. Postjudgment Interest

In her original fee petition, plaintiff also argued that she is entitled to postjudgment interest. Pl.'s 1st Fee Mem. at 14. Defendant did not oppose this request, *see generally* Def.'s 1st Fee Opp., and it also did not object to the Magistrate Judge's recommendation to award postjudgment interest to plaintiff. *See generally* Def.'s Objs. Postjudgment interest for an attorney's fee award is governed by 28 U.S.C. § 1961(a), which provides in relevant part that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a); *see Akinseye v. Dist. of Columbia*, 339 F.3d 970, 972 (D.C. Cir. 2003) (approvingly mentioning that postjudgment interest on attorney's fees would be available under 28 U.S.C. § 1961(a)).

Although the D.C. Circuit has not weighed in on the issue, the majority of Circuits, and at least one judge in this district, have held that interest begins to run from the date of judgment entitling the prevailing party to attorney's fees. *See, e.g.*, *Contractors of Ohio, Inc. v. Drabnik*, 250 F.3d 482, 495 (6th Cir. 2001) (holding that "the language of § 1961(a) permits the interest to run on a fee award from the time of entry of the judgment which unconditionally entitles the prevailing party to a reasonable attorney fees"); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995) ("Interest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set."); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052–53 (11th Cir. 1994); *Jenkins ex rel Agyei v. Missouri*, 931 F.2d 1273, 1277 (8th Cir. 1991); *Boehner v. McDermott*, 541 F. Supp. 2d 310, 324 (D.D.C. 2008) ("[T]he Court will follow the majority

view and, accordingly, holds that interest began to accrue on the fee award on" the date of the "valid judgment that unconditionally entitled [plaintiff] to an award of attorneys' fees . . . ."); *see also Harvey v. Mohammed*, 951 F. Supp. 2d 47, 62 (D.D.C. 2013) (declining to adopt a specific view because in that case, the date on which plaintiff became unconditionally entitled to fees was the same date on which those fees were quantified); *cf. Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (holding that, in the context of awarding damages under section 1961(a), interest did not accrue from the date of the original judgment because it was not supported by evidence and was vacated).

Only a couple of Circuit courts have held that interest does not begin to accrue until the district court enters an order quantifying the amount of fees. *See Eaves v. Cty. of Cape May*, 239 F.3d 527, 542 (3d Cir. 2001) ("[W]e hold that pursuant to 28 U.S.C. § 1961(a), post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment quantifying the amount of fees owed to the prevailing party rather than the date that the Court finds that the party is entitled to recover fees, if those determinations are made separately."); *MidAmerica Fed. Savings & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 962 F.2d 1470, 1475–77 (10th Cir. 2001) (same).

Because defendant has never objected to an award of postjudgment interest to plaintiff, the Court finds an award of postjudgment interest to be warranted. Plaintiff accepted defendant's Rule 68 offer, which stated that she would be awarded "$1,0001.00, plus costs and expenses together with reasonable attorney fees for all claims under the Fair Debt Collection Practices Act." Pl.'s Notice of Acceptance of Def.'s Rule 68 Offer of J. [Dkt. # 11]. On February 28, 2014, the Clerk entered judgment for plaintiff. J. on Offer & Acceptance [Dkt. # 14]. Following the majority view and the view that has been adopted in this district, the Court concludes that postjudgment interest

18

should be calculated from the date the Clerk entered judgment since the Clerk's order constitutes a valid judgment that entitled plaintiff to an award of reasonable attorney's fees. Therefore, defendant must pay plaintiff $17,000.00 plus interest from the date of February 28, 2014.

## CONCLUSION

After an independent review of the record, including the attorney's fee motions filed in this case, the time entries and declarations submitted by both parties, the Magistrate Judge's Report and Recommendation, and the parties' objections to the Magistrate Judge's ruling, and based on the Court's ultimate authority and discretion to award attorney's fees, defendant must pay attorney's fees in the amount of $17,000.00 plus postjudgment interest to plaintiff.

A separate order will issue.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: October 19, 2017